02-11-188-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

 

NO. 02-11-00188-CR

 


 
 
 Jairo Hernandez
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

----------

 

FROM Criminal
District Court No. 4 OF Tarrant COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

          In
five issues, appellant Jairo Hernandez appeals his conviction for continuous
sexual abuse of a child.  We affirm.

Background
Facts

          M.V.
(Megan) gave birth to M.B. (Mary)[2] in February 1997.  In
2009, when Mary was twelve years old and in the seventh grade, Megan began
dating appellant, who was twenty-three years old.  Appellant moved into a house
in Fort Worth with Megan, Mary, and others.  At first, Mary liked appellant and
thought that he was nice; appellant bought things for her, watched movies with
her, and took her to the park.  Megan worked at a bar late on weekend nights,
and during those times, Mary stayed home with appellant.  Megan had met
appellant at the bar where she worked.

          One
day in October 2009, when Mary and appellant were at the house, appellant
kissed her on her mouth.  When she told him to stop, he did so and asked her to
not tell anyone.  A few nights later, appellant kissed her again on her mouth. 
Several nights after that, appellant came into her room and told her that he
wanted to have sex with her.  Appellant took off his pants and underwear, and
after Mary took off her pants, appellant got on top of her, put his penis
inside her underwear, and moved it around near her vagina.  Appellant wanted to
take off her underwear, but she would not let him.

          A
few nights after that incident, appellant again told Mary that he wanted to
have sex with her, and they had sex on her bed.  After they finished having
sex, appellant grabbed a shirt from Mary’s dirty laundry to wipe off his semen. 
Appellant told Mary that if she told anyone about their sexual encounter, he
would go to jail.  Appellant had sex with Mary “a few times a week” from
October 2009 through February 2010.  On some occasions, appellant put his penis
into Mary’s mouth, and on one occasion, he put his finger inside her vagina.

          One
night in February 2010, after appellant and Megan had an argument, he went to a
bar.  When he returned,[3] Megan would not let him
into her room.  Later that night, appellant went into Mary’s room, and he and Mary
had sex again.  As appellant and Mary were putting their clothes on, they heard
Megan moving outside Mary’s room, and appellant hid in Mary’s closet.  According
to Mary, as Megan was trying to unlock Mary’s door, Mary “changed real fast and . . .
opened the door.”[4]  Mary told Megan that she
did not want Megan in the room.  When Megan eventually found appellant in the
closet, Mary told Megan that appellant had been hiding there only because Megan
was mad at him.  Megan told appellant, who, according to Megan, had “terror in
his eyes,” to leave the room.  When Megan tried to talk to Mary about what had
happened, Mary was shaking but said that nothing had occurred.  Megan looked at
Mary’s bed and found warm semen on a blanket.  She removed the blanket from
Mary’s bed and put it in a closet.

          Mary
went to school the next day, and Megan arranged for Mary to stay with a
neighbor after school had ended.  Mary told that neighbor about her
relationship with appellant, and Mary went to a hospital for a medical exam.  She
also gave a recorded statement about her relationship with appellant.

          Appellant
packed some of his clothes, left the house that he had been staying in with
Megan and Mary, and went to Dallas while denying that he had acted
inappropriately with Mary.  According to Megan, appellant “left because he knew
what he had done.”  Appellant later went to Houston and told Megan that he was
planning to go to Honduras.  Because Megan did not want appellant to flee, she
went to Houston, picked him up, brought him back to Fort Worth, and had “intimate
relations” with him.

          A
grand jury indicted appellant for one count of continuous sexual abuse of a
child and three counts of aggravated sexual assault.[5] 
Appellant filed several pretrial motions, including a motion to suppress any
oral statements that he had made to the police along with evidence obtained
through the statements.  During a pretrial hearing, the trial court suppressed
a videotape of a statement that appellant had made on the ground that the State
did not give a complete copy of the statement to appellant at least twenty days
before the trial began.[6]  The court, however, did
not make a pretrial ruling concerning the admissibility of a buccal swab that
the police had gathered during the statement or of a form that appellant had
signed while making the statement.

          At
trial, appellant pled not guilty to each count of the indictment.  The jury
convicted appellant of continuous sexual abuse of a child, and following the
instructions in the jury charge, the jury did not consider the three counts of
aggravated sexual assault.  The jury assessed appellant’s punishment at forty
years’ confinement, and the trial court sentenced him accordingly.  He brought
this appeal.

Evidentiary
Sufficiency

          In
his first two issues, appellant argues that the evidence is insufficient to
sustain his conviction for continuous sexual abuse of a child.  A person
commits that first-degree felony offense if “during a period that is 30 or more
days in duration, the person commits two or more acts of sexual abuse” and “at
the time of the commission of each of the acts of sexual abuse, the actor is 17
years of age or older and the victim is a child younger than 14 years of age.” 
Tex. Penal Code Ann. § 21.02(b), (h); Lane v. State, 357 S.W.3d 770, 773
(Tex. App.—Houston [14th Dist.] 2011, pet. ref’d).

          In
our due-process review of the sufficiency of the evidence to support a
conviction, we view all of the evidence in the light most favorable to the verdict
to determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Isassi v. State, 330
S.W.3d 633, 638 (Tex. Crim. App. 2010).  This standard gives full play to the
responsibility of the trier of fact to resolve conflicts in the testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.  Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Isassi,
330 S.W.3d at 638.

          A
child sexual abuse victim’s testimony, standing alone, may be sufficient to
support a conviction.  See Garcia v. State, 563 S.W.2d 925, 928 (Tex. Crim.
App. [Panel Op.] 1978); Johnston v. State, 230 S.W.3d 450, 455 (Tex.
App.—Fort Worth 2007, no pet.); West v. State, 121 S.W.3d 95, 111 (Tex. App.—Fort
Worth 2003, pet. ref’d).  Mary’s and Megan’s testimonies, which we have
summarized through the facts recited above, support the jury’s finding of
appellant’s guilt for continuous sexual abuse of a child.

          Beyond
Mary’s and Megan’s testimonies, significant other evidence also substantiates the
jury’s verdict.  For example, Dr. Jamye Coffman, a child abuse pediatrician,
testified that a sexual assault nurse examiner performed an examination of Mary
about six days after, according to Mary, she had last had sex with appellant.  Mary
told the nurse that she had not had sexual partners other than appellant.  The
nurse discovered a healing tear of Mary’s hymen, which indicated that the tear
had occurred within two or three weeks before the exam.  Dr. Coffman diagnosed
Mary as having been sexually abused.

          Amy
McClellen, a detective with the Fort Worth Police Department (FWPD), was
assigned to Mary’s case in February 2010.  Detective McClellen obtained a
statement from Megan and arranged for Mary to attend a forensic interview.  On
March 2, 2010, Megan brought the blanket from Mary’s bed to Detective McClellen. 
Detective McClellen sent the blanket to a lab for testing.  Appellant gave a
sample of his DNA through a buccal swab to Detective McClellen.  Cassie
Johnson, a forensic scientist, examined the blanket and found that it contained
sperm cells.  The FWPD sent a cutting from the blanket to the University of
North Texas Center for Human Identification, where Farah Plopper, a forensic
analyst, found that the cutting contained a DNA profile that matched
appellant’s DNA.[7]

          Finally,
John Berestecky, an investigator with Child Protective Services (CPS),
testified that appellant admitted during an interview that he had sexually
abused Mary three times.

          Despite
this evidence supporting appellant’s conviction, he contends that the evidence
is insufficient under Jackson because it did not show that the blanket
containing his DNA came from Mary’s bedroom.  Megan testified that the semen-stained
blanket came from Mary’s bed.  She explained that she stored the blanket in the
top of a closet before giving it to Detective McClellen, and she identified the
blanket that Johnson examined as the blanket that came from Mary’s room.  Megan
said that the blanket had not been altered or changed from the time that she
put it in her closet until the time that she gave it to Detective McClellen.  Detective
McClellen testified that upon receiving the blanket, she put it in FWPD’s
property room.  Based on these facts, we conclude that the evidence
sufficiently established that the blanket upon which appellant’s DNA was found
was the blanket that came from Mary’s bedroom.

          Appellant
also contends that the evidence is insufficient under Jackson because
Mary could not identify him in court.  At trial in May 2011, when the
prosecutor first asked Mary if she saw appellant in the courtroom, she stated,
“Well, I don’t want to look,” and she then said that she thought that he was
there.  The second time that the prosecutor asked Mary if appellant was in the
courtroom, Mary said, “I think so,” but then said, “I don’t see him.”  Mary
said that she had last seen appellant in February 2010.

          Although
Mary could not identify appellant, Megan identified him in court as the man who
had dated her, who had lived with her, and who had been found in Mary’s closet on
the same night in February 2010 that Megan found warm semen on Mary’s bed.  And
as we mentioned above, appellant admitted to Berestecky that he had engaged in
sexual intercourse with Mary.  Thus, despite Mary’s inability to locate
appellant in court, we conclude that the evidence sufficiently identified him
as the person who sexually abused her.  See Couchman v. State, 3
S.W.3d 155, 162 (Tex. App.—Fort Worth 1999, pet. ref’d) (“Identity of a
perpetrator may be proven by either direct or circumstantial evidence.”).

          Viewing
the evidence in the light most favorable to the jury’s verdict of conviction,
we hold that the jury could have rationally found the essential elements of continuous
sexual abuse of a child beyond a reasonable doubt.  See Tex. Penal
Code Ann. § 21.02(b); Jackson, 443 U.S. at 319, 99 S. Ct. at 2789; Isassi,
330 S.W.3d at 638.  We therefore overrule appellant’s first two issues.

The
Forfeiture of Appellant’s Evidentiary Complaints

          In
his third issue, appellant argues that the trial court erred by admitting
State’s Exhibit 11, his Spanish-language consent form for the buccal swab DNA
sample.  As we mentioned above, the trial court did not make a pretrial ruling
concerning the admissibility of the consent form; instead, the following
exchange occurred between the trial court and appellant’s trial counsel:

          THE COURT:  You know, without hearing everything,
it’s hard for me to imagine that the fact that a recorded statement is not
admissible makes a written consent not admissible.

          [DEFENSE COUNSEL]:  I would then ask the Court
if it would perhaps ask the State to --

          THE COURT:  I’m not going to ask the State to
do anything.  I’m here to rule on things as they come up.  If they offer
something and you think it’s not admissible, then you need to object, then I’ll
hear what I think I need to hear to rule on that objection.

          [DEFENSE COUNSEL]:  I’ll do that, Judge.

          During
the State’s direct examination of Detective McClellen in front of the jury, she
testified, without objection, that she had asked appellant for his consent to
give his DNA sample, that the FWPD had used a form for suspects to express
their consent to give such samples, that the FWPD had used translators and a
Spanish form to obtain consent from suspects who do not speak English, that
appellant had signed the Spanish consent form, and that appellant had
consensually given a sample of his DNA.  After the jury heard all of that
evidence, the State offered the Spanish consent form as Exhibit 11, but appellant
objected to the admission of the form on the basis that he had signed the form as
a part of giving his verbal statement to Detective McClellen, which the trial
court had ruled to be inadmissible.  Also, appellant objected to Detective McClellen’s
testimony about his expressing verbal consent for giving his DNA sample on the
ground that any consent was conveyed to Detective McClellen by the translator
and was therefore hearsay.  The trial court overruled appellant’s objections
and admitted the consent form.

          The
State argues that appellant forfeited the complaints that he makes in his third
issue, and we agree.  To preserve a complaint for our review, a party must have
presented to the trial court a timely request, objection, or motion that states
the specific grounds for the desired ruling if they are not apparent from the
context of the request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); Lovill
v. State, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009).  Further, the
trial court must have ruled on the request, objection, or motion, either
expressly or implicitly, or the complaining party must have objected to the
trial court’s refusal to rule.  Tex. R. App. P. 33.1(a)(2); Mendez v. State,
138 S.W.3d 334, 341 (Tex. Crim. App. 2004).  A reviewing court should not
address the merits of an issue that has not been preserved for appeal.  Wilson
v. State, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh’g).

          As
we explained in Ratliff v. State, an “objection to . . . evidence must
be made before a witness gives substantial testimony about it.”  320 S.W.3d
857, 861 (Tex. App.—Fort Worth 2010, pet. ref’d) (citing Marini v. State,
593 S.W.2d 709, 714 (Tex. Crim. App. [Panel Op.] 1980)).  Thus, in Ratliff,
we held that the defendant’s “failure to object at the time [a detective]
specifically described the physical evidence and explained how he found that
evidence forfeited any error associated with his objection to the State’s later
introduction of the evidence.”  Id. at 862.  The principles that we
explained in Ratliff control our resolution of appellant’s third issue;
appellant secured a ruling on his objection to the admission of the Spanish
consent form only after Detective McClellen gave substantial testimony about it,
without objection, in front of the jury.  Therefore, we hold that appellant
forfeited any error associated with his objections to the admission of the
Spanish consent form or to Detective McClellen’s testimony about appellant’s
consent to giving the buccal swab.  See id.; see also Clay v. State,
361 S.W.3d 762, 766 (Tex. App.—Fort Worth 2012, no pet.) (“A trial court’s
erroneous admission of evidence will not require reversal when other such
evidence was received without objection, either before or after the
complained-of ruling.”); Thomas v. State, 884 S.W.2d 215, 216–17 (Tex.
App.—El Paso 1994, pet. ref’d); Turner v. State, 642 S.W.2d 216, 217
(Tex. App.—Houston [14th Dist.] 1982, no pet.) (“Error has . . . been held
waived in situations . . . where there was no objection regarding the testimony
preceding the admission of the exhibits.”).  We overrule appellant’s third
issue.

          In
appellant’s fourth issue, he argues that the consent form was inadmissible
because it was obtained by a person whom he had no opportunity to cross examine
and whose qualifications to interpret from English to Spanish and Spanish to
English were not known.  He contends that the “person interpreting for the
police was not adequately proved to have the interpretation skills required to
admit evidence” under article 38.30 of the code of criminal procedure.  See
Tex. Code Crim. Proc. Ann. art. 38.30 (West Supp. 2011).  For the reasons
explained above in our resolution of appellant’s third issue, however, and also
because appellant did not object to the admission of the Spanish consent form
at trial on the basis that he asserts in his fourth issue on appeal, we hold
that he forfeited that issue, and we overrule it.  See Tex. R. App. P.
33.1(a)(1); Heidelberg v. State, 144 S.W.3d 535, 537 (Tex. Crim. App.
2004) (“[I]t is well settled that the legal basis of a complaint raised on
appeal cannot vary from that raised at trial.”); Lemasurier v. State, 91
S.W.3d 897, 902 (Tex. App.—Fort Worth 2002, pet. ref’d) (“[A]n objection stating
one legal basis may not be used to support a different legal theory on appeal.  Therefore,
if counsel objects on an incorrect ground at trial and is overruled, but later
cites the correct ground to the appellate court, error is not preserved.”).

          In
his fifth issue, appellant argues that the trial court erred by allowing
evidence of his admission to Berestecky that he sexually abused Mary.  At
trial, appellant objected to Berestecky’s testimony about his admission on the
ground that it was hearsay because Berestecky learned of it only through a
translator.  On appeal, appellant does not urge hearsay as the reason that the
trial court should have excluded the evidence, but he instead argues, in a
similar fashion to the argument in his fourth issue, that “the CPS interpreter
was not adequately proved to have the interpretation skills required to admit
evidence.”  He also argues that the lack of an opportunity to test the
interpreter’s qualifications violates his right of confrontation.  We hold that
appellant’s hearsay objection did not preserve the complaints he makes on
appeal in his fifth issue, and we therefore overrule that issue.  See
Tex. R. App. P. 33.1(a)(1); Lemasurier, 91 S.W.3d at 902; Reyna v.
State, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) (“An objection on hearsay
does not preserve error on Confrontation Clause grounds.”).

Conclusion

          Having
overruled each of appellant’s issues, we affirm the trial court’s judgment.

 

 

TERRIE LIVINGSTON
CHIEF JUSTICE

 

PANEL: 
LIVINGSTON,
C.J.; GARDNER and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  June 21, 2012









[1]See Tex. R. App. P. 47.4.





[2]To protect M.B.’s
identity, we will use “Mary” and “Megan” to respectively refer to M.B. and M.V.
throughout this opinion.





[3]Between October 2009 and February
2010, Megan, Mary, and appellant moved into a different house.





[4]Megan testified that when
Mary opened the door, Mary was naked.





[5]See Tex. Penal Code
Ann. §§ 21.02(b), 22.021(a)(1)(B), (2)(B) (West Supp. 2011).





[6]See Tex. Code Crim.
Proc. Ann. art. 38.22, § 3(a)(5) (West 2005).





[7]The cutting also contained
someone else’s DNA.  Plopper said, “[W]henever we’re dealing with cuttings from
cloth . . . , there often seems to be a mixture [of DNA], because anyone that’s
handled that item before or touched [it] could have left skin cells on it . . .
.”  She explained that the chance that the predominant DNA sample on the
cutting came from someone other than appellant was 2.1 quintillion to one.