

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-11-00188-CR

JAIRO HERNANDEZ                                                    APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In five issues, appellant Jairo Hernandez appeals his conviction for continuous sexual abuse of a child. We affirm.

## Background Facts

M.V. (Megan) gave birth to M.B. (Mary)[2] in February 1997. In 2009, when Mary was twelve years old and in the seventh grade, Megan began dating

---

[1]See Tex. R. App. P. 47.4.

[2]To protect M.B.'s identity, we will use "Mary" and "Megan" to respectively refer to M.B. and M.V. throughout this opinion.

appellant, who was twenty-three years old. Appellant moved into a house in Fort Worth with Megan, Mary, and others. At first, Mary liked appellant and thought that he was nice; appellant bought things for her, watched movies with her, and took her to the park. Megan worked at a bar late on weekend nights, and during those times, Mary stayed home with appellant. Megan had met appellant at the bar where she worked.

One day in October 2009, when Mary and appellant were at the house, appellant kissed her on her mouth. When she told him to stop, he did so and asked her to not tell anyone. A few nights later, appellant kissed her again on her mouth. Several nights after that, appellant came into her room and told her that he wanted to have sex with her. Appellant took off his pants and underwear, and after Mary took off her pants, appellant got on top of her, put his penis inside her underwear, and moved it around near her vagina. Appellant wanted to take off her underwear, but she would not let him.

A few nights after that incident, appellant again told Mary that he wanted to have sex with her, and they had sex on her bed. After they finished having sex, appellant grabbed a shirt from Mary's dirty laundry to wipe off his semen. Appellant told Mary that if she told anyone about their sexual encounter, he would go to jail. Appellant had sex with Mary "a few times a week" from October 2009 through February 2010. On some occasions, appellant put his penis into Mary's mouth, and on one occasion, he put his finger inside her vagina.

One night in February 2010, after appellant and Megan had an argument, he went to a bar. When he returned,[3] Megan would not let him into her room. Later that night, appellant went into Mary's room, and he and Mary had sex again. As appellant and Mary were putting their clothes on, they heard Megan moving outside Mary's room, and appellant hid in Mary's closet. According to Mary, as Megan was trying to unlock Mary's door, Mary "changed real fast and . . . opened the door."[4] Mary told Megan that she did not want Megan in the room. When Megan eventually found appellant in the closet, Mary told Megan that appellant had been hiding there only because Megan was mad at him. Megan told appellant, who, according to Megan, had "terror in his eyes," to leave the room. When Megan tried to talk to Mary about what had happened, Mary was shaking but said that nothing had occurred. Megan looked at Mary's bed and found warm semen on a blanket. She removed the blanket from Mary's bed and put it in a closet.

Mary went to school the next day, and Megan arranged for Mary to stay with a neighbor after school had ended. Mary told that neighbor about her relationship with appellant, and Mary went to a hospital for a medical exam. She also gave a recorded statement about her relationship with appellant.

---

[3]Between October 2009 and February 2010, Megan, Mary, and appellant moved into a different house.

[4]Megan testified that when Mary opened the door, Mary was naked.

Appellant packed some of his clothes, left the house that he had been staying in with Megan and Mary, and went to Dallas while denying that he had acted inappropriately with Mary. According to Megan, appellant "left because he knew what he had done." Appellant later went to Houston and told Megan that he was planning to go to Honduras. Because Megan did not want appellant to flee, she went to Houston, picked him up, brought him back to Fort Worth, and had "intimate relations" with him.

A grand jury indicted appellant for one count of continuous sexual abuse of a child and three counts of aggravated sexual assault.[5] Appellant filed several pretrial motions, including a motion to suppress any oral statements that he had made to the police along with evidence obtained through the statements. During a pretrial hearing, the trial court suppressed a videotape of a statement that appellant had made on the ground that the State did not give a complete copy of the statement to appellant at least twenty days before the trial began.[6] The court, however, did not make a pretrial ruling concerning the admissibility of a buccal swab that the police had gathered during the statement or of a form that appellant had signed while making the statement.

At trial, appellant pled not guilty to each count of the indictment. The jury convicted appellant of continuous sexual abuse of a child, and following the

---

[5]*See* Tex. Penal Code Ann. §§ 21.02(b), 22.021(a)(1)(B), (2)(B) (West Supp. 2011).

[6]*See* Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)(5) (West 2005).

4

instructions in the jury charge, the jury did not consider the three counts of aggravated sexual assault. The jury assessed appellant's punishment at forty years' confinement, and the trial court sentenced him accordingly. He brought this appeal.

### Evidentiary Sufficiency

In his first two issues, appellant argues that the evidence is insufficient to sustain his conviction for continuous sexual abuse of a child. A person commits that first-degree felony offense if "during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse" and "at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age." Tex. Penal Code Ann. § 21.02(b), (h); *Lane v. State*, 357 S.W.3d 770, 773 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd).

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi*, 330 S.W.3d at 638.

A child sexual abuse victim's testimony, standing alone, may be sufficient to support a conviction. *See Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. [Panel Op.] 1978); *Johnston v. State*, 230 S.W.3d 450, 455 (Tex. App.—Fort Worth 2007, no pet.); *West v. State*, 121 S.W.3d 95, 111 (Tex. App.—Fort Worth 2003, pet. ref'd). Mary's and Megan's testimonies, which we have summarized through the facts recited above, support the jury's finding of appellant's guilt for continuous sexual abuse of a child.

Beyond Mary's and Megan's testimonies, significant other evidence also substantiates the jury's verdict. For example, Dr. Jamye Coffman, a child abuse pediatrician, testified that a sexual assault nurse examiner performed an examination of Mary about six days after, according to Mary, she had last had sex with appellant. Mary told the nurse that she had not had sexual partners other than appellant. The nurse discovered a healing tear of Mary's hymen, which indicated that the tear had occurred within two or three weeks before the exam. Dr. Coffman diagnosed Mary as having been sexually abused.

Amy McClellen, a detective with the Fort Worth Police Department (FWPD), was assigned to Mary's case in February 2010. Detective McClellen obtained a statement from Megan and arranged for Mary to attend a forensic interview. On March 2, 2010, Megan brought the blanket from Mary's bed to Detective McClellen. Detective McClellen sent the blanket to a lab for testing. Appellant gave a sample of his DNA through a buccal swab to Detective McClellen. Cassie Johnson, a forensic scientist, examined the blanket and found

6

that it contained sperm cells. The FWPD sent a cutting from the blanket to the University of North Texas Center for Human Identification, where Farah Plopper, a forensic analyst, found that the cutting contained a DNA profile that matched appellant's DNA.[7]

Finally, John Berestecky, an investigator with Child Protective Services (CPS), testified that appellant admitted during an interview that he had sexually abused Mary three times.

Despite this evidence supporting appellant's conviction, he contends that the evidence is insufficient under *Jackson* because it did not show that the blanket containing his DNA came from Mary's bedroom. Megan testified that the semen-stained blanket came from Mary's bed. She explained that she stored the blanket in the top of a closet before giving it to Detective McClellen, and she identified the blanket that Johnson examined as the blanket that came from Mary's room. Megan said that the blanket had not been altered or changed from the time that she put it in her closet until the time that she gave it to Detective McClellen. Detective McClellen testified that upon receiving the blanket, she put it in FWPD's property room. Based on these facts, we conclude that the

---

[7]The cutting also contained someone else's DNA. Plopper said, "[W]henever we're dealing with cuttings from cloth . . . , there often seems to be a mixture [of DNA], because anyone that's handled that item before or touched [it] could have left skin cells on it . . . ." She explained that the chance that the predominant DNA sample on the cutting came from someone other than appellant was 2.1 quintillion to one.

evidence sufficiently established that the blanket upon which appellant's DNA was found was the blanket that came from Mary's bedroom.

Appellant also contends that the evidence is insufficient under *Jackson* because Mary could not identify him in court. At trial in May 2011, when the prosecutor first asked Mary if she saw appellant in the courtroom, she stated, "Well, I don't want to look," and she then said that she thought that he was there. The second time that the prosecutor asked Mary if appellant was in the courtroom, Mary said, "I think so," but then said, "I don't see him." Mary said that she had last seen appellant in February 2010.

Although Mary could not identify appellant, Megan identified him in court as the man who had dated her, who had lived with her, and who had been found in Mary's closet on the same night in February 2010 that Megan found warm semen on Mary's bed. And as we mentioned above, appellant admitted to Berestecky that he had engaged in sexual intercourse with Mary. Thus, despite Mary's inability to locate appellant in court, we conclude that the evidence sufficiently identified him as the person who sexually abused her. *See Couchman v. State*, 3 S.W.3d 155, 162 (Tex. App.—Fort Worth 1999, pet. ref'd) ("Identity of a perpetrator may be proven by either direct or circumstantial evidence.").

Viewing the evidence in the light most favorable to the jury's verdict of conviction, we hold that the jury could have rationally found the essential elements of continuous sexual abuse of a child beyond a reasonable doubt.

8

*See* Tex. Penal Code Ann. § 21.02(b); *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Isassi*, 330 S.W.3d at 638. We therefore overrule appellant's first two issues.

## The Forfeiture of Appellant's Evidentiary Complaints

In his third issue, appellant argues that the trial court erred by admitting State's Exhibit 11, his Spanish-language consent form for the buccal swab DNA sample. As we mentioned above, the trial court did not make a pretrial ruling concerning the admissibility of the consent form; instead, the following exchange occurred between the trial court and appellant's trial counsel:

> THE COURT: You know, without hearing everything, it's hard for me to imagine that the fact that a recorded statement is not admissible makes a written consent not admissible.
>
> [DEFENSE COUNSEL]: I would then ask the Court if it would perhaps ask the State to --
>
> THE COURT: I'm not going to ask the State to do anything. I'm here to rule on things as they come up. If they offer something and you think it's not admissible, then you need to object, then I'll hear what I think I need to hear to rule on that objection.
>
> [DEFENSE COUNSEL]: I'll do that, Judge.

During the State's direct examination of Detective McClellen in front of the jury, she testified, without objection, that she had asked appellant for his consent to give his DNA sample, that the FWPD had used a form for suspects to express their consent to give such samples, that the FWPD had used translators and a Spanish form to obtain consent from suspects who do not speak English, that appellant had signed the Spanish consent form, and that appellant had

9

consensually given a sample of his DNA. After the jury heard all of that evidence, the State offered the Spanish consent form as Exhibit 11, but appellant objected to the admission of the form on the basis that he had signed the form as a part of giving his verbal statement to Detective McClellen, which the trial court had ruled to be inadmissible. Also, appellant objected to Detective McClellen's testimony about his expressing verbal consent for giving his DNA sample on the ground that any consent was conveyed to Detective McClellen by the translator and was therefore hearsay. The trial court overruled appellant's objections and admitted the consent form.

The State argues that appellant forfeited the complaints that he makes in his third issue, and we agree. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule. Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004). A reviewing court should not address the merits of an issue that has not been preserved for appeal. *Wilson v. State*, 311 S.W.3d 452, 473 (Tex. Crim. App. 2010) (op. on reh'g).

10

As we explained in *Ratliff v. State*, an "objection to . . . evidence must be made before a witness gives substantial testimony about it." 320 S.W.3d 857, 861 (Tex. App.—Fort Worth 2010, pet. ref'd) (citing *Marini v. State*, 593 S.W.2d 709, 714 (Tex. Crim. App. [Panel Op.] 1980)). Thus, in *Ratliff*, we held that the defendant's "failure to object at the time [a detective] specifically described the physical evidence and explained how he found that evidence forfeited any error associated with his objection to the State's later introduction of the evidence." *Id.* at 862. The principles that we explained in *Ratliff* control our resolution of appellant's third issue; appellant secured a ruling on his objection to the admission of the Spanish consent form only after Detective McClellen gave substantial testimony about it, without objection, in front of the jury. Therefore, we hold that appellant forfeited any error associated with his objections to the admission of the Spanish consent form or to Detective McClellen's testimony about appellant's consent to giving the buccal swab. *See id.*; *see also Clay v. State*, 361 S.W.3d 762, 766 (Tex. App.—Fort Worth 2012, no pet.) ("A trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling."); *Thomas v. State*, 884 S.W.2d 215, 216–17 (Tex. App.—El Paso 1994, pet. ref'd); *Turner v. State*, 642 S.W.2d 216, 217 (Tex. App.—Houston [14th Dist.] 1982, no pet.) ("Error has . . . been held waived in situations . . . where there was no objection regarding the *testimony* preceding the admission of the exhibits."). We overrule appellant's third issue.

In appellant's fourth issue, he argues that the consent form was inadmissible because it was obtained by a person whom he had no opportunity to cross examine and whose qualifications to interpret from English to Spanish and Spanish to English were not known. He contends that the "person interpreting for the police was not adequately proved to have the interpretation skills required to admit evidence" under article 38.30 of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.30 (West Supp. 2011). For the reasons explained above in our resolution of appellant's third issue, however, and also because appellant did not object to the admission of the Spanish consent form at trial on the basis that he asserts in his fourth issue on appeal, we hold that he forfeited that issue, and we overrule it. *See* Tex. R. App. P. 33.1(a)(1); *Heidelberg v. State*, 144 S.W.3d 535, 537 (Tex. Crim. App. 2004) ("[I]t is well settled that the legal basis of a complaint raised on appeal cannot vary from that raised at trial."); *Lemasurier v. State*, 91 S.W.3d 897, 902 (Tex. App.— Fort Worth 2002, pet. ref'd) ("[A]n objection stating one legal basis may not be used to support a different legal theory on appeal. Therefore, if counsel objects on an incorrect ground at trial and is overruled, but later cites the correct ground to the appellate court, error is not preserved.").

In his fifth issue, appellant argues that the trial court erred by allowing evidence of his admission to Berestecky that he sexually abused Mary. At trial, appellant objected to Berestecky's testimony about his admission on the ground that it was hearsay because Berestecky learned of it only through a translator.

12

On appeal, appellant does not urge hearsay as the reason that the trial court should have excluded the evidence, but he instead argues, in a similar fashion to the argument in his fourth issue, that "the CPS interpreter was not adequately proved to have the interpretation skills required to admit evidence." He also argues that the lack of an opportunity to test the interpreter's qualifications violates his right of confrontation. We hold that appellant's hearsay objection did not preserve the complaints he makes on appeal in his fifth issue, and we therefore overrule that issue. *See* Tex. R. App. P. 33.1(a)(1); *Lemasurier*, 91 S.W.3d at 902; *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005) ("An objection on hearsay does not preserve error on Confrontation Clause grounds.").

## Conclusion

Having overruled each of appellant's issues, we affirm the trial court's judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: June 21, 2012