**Affirmed and Opinion filed November 29, 2011.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-10-00925-CR
_____

### JECARRA TREMAIN LANE, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 177th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1177107**

## OPINION

Appellant Jecarra Tremain Lane was convicted for continuous sexual abuse of a young child and sentenced to 30 years in prison. *See* TEX. PENAL CODE ANN. § 21.02 (West 2011). He contends that the evidence was legally and factually insufficient to support the jury's finding that (1) he committed two or more acts of abuse over a period of 30 or more days; and (2) both acts occurred on or after September 1, 2007, the effective date of the statute under which he was convicted. He also argues that the trial court failed properly to instruct the jury on the culpable mental state required for the offense. We affirm.

# I.    FACTUAL AND PROCEDURAL BACKGROUND

Appellant first came into contact with J.F.R. when appellant began dating J.F.R.'s mother, Nicole, in 2003.   Appellant was 25 or 26 years old at the time, and J.F.R. was seven or eight.   Though his dating relationship with Nicole was brief, appellant remained friendly with her and continued to serve as a father figure to J.F.R. and two of J.F.R.'s older brothers.   In 2004, appellant founded Chozen Mime Ministry ("Chozen"), a specialized ministry in which participants mime-danced to religious music.   Chozen generally consisted of six or seven preteen and teenage participants.   J.F.R. joined Chozen when he was about nine years old.   Chozen participated in local and regional events.   When travelling for these events, the group members would often stay together in a single hotel room.   The sleeping arrangements varied on different occasions, but typically, several members would share a bed, with others sleeping on the floor if there was not enough room.   J.F.R. generally slept alongside appellant.

In April 2008, J.F.R. told Nicole that appellant had inappropriately touched him in "the front" and in "the back."   According to J.F.R., appellant first abused him at the home of Jacqueline Smith, appellant's godmother.   Appellant was living at Ms. Smith's house in the fall of 2007.   J.F.R. would sometimes stay there with him on weekends.   J.F.R. and appellant slept close together on an air mattress in appellant's room, and appellant would sleep with his arm around J.F.R.   On one occasion, J.F.R. woke up to find himself on top of appellant's body with his penis touching appellant's; both were clothed.   Appellant moved J.F.R. up and down against his body with his legs and "middle part."   J.F.R. could tell that appellant had an erection because "it was wet" on J.F.R.'s clothes.   After about fifteen minutes, appellant moved J.F.R. back to his side and both went to sleep.   J.F.R. was not sure when this incident occurred.   According to appellant, however, J.F.R. and appellant stayed at Ms. Smith's house on only one occasion, in March 2007.   Appellant also stated that other members of Chozen had been there on that occasion and had shared the bed with J.F.R. and him.

A second set of incidents occurred at a Sun Suites location in Houston. According to J.F.R., he and appellant stayed there alone two or three times and with other group members twice. On the occasions that they stayed there alone, they shared one large bed. Appellant and J.F.R. slept "neck to neck," with appellant's arms around J.F.R.'s waist. On two separate occasions, J.F.R. awoke to find himself on top of appellant, being moved up and down with his penis against appellant's. Officer John Barnes of the Houston Police Department recovered receipts showing that appellant checked in and out of the Sun Suites on three sets of dates in 2008: January 25–26, February 1–2, and February 9–10.

A fourth incident occurred at a Quality Inn and Suites in the Dallas area, where Chozen stayed while attending the Texas Gospel Awards in March 2008. According to J.F.R., he and appellant shared one of two beds in the bedroom. Two other group members shared the other bed, and the remaining members slept on the floor in a separate living room area. After everyone fell asleep, J.F.R. woke up to feel himself being pulled toward appellant. Appellant pulled down J.F.R.'s pants and began to play with J.F.R.'s penis. Appellant then pulled his own pants down and put his penis against J.F.R.'s buttocks. J.F.R. could feel that appellant had an erection. Eventually, J.F.R. could tell that appellant had ejaculated because the sheet on which they were sleeping was wet.

Appellant was charged with continuous sexual abuse of a young child on September 23, 2008. It was specifically alleged that appellant had committed two or more acts of indecency with J.F.R. in Harris County, Texas, on or about September 2, 2007 and on or about March 1, 2008. At trial, the jury was instructed that a person commits continuous sexual abuse of a young child "if, during a period that is 30 or more days in duration, the [accused] commits two or more acts of sexual abuse . . . [each of which] is a violation of the following penal law: Indecency with a child." The jury was further instructed that "indecency with a child" is defined as "intentionally engag[ing] in sexual contact with the child or caus[ing] the child to engage in sexual contact." The trial court defined "sexual contact" as requiring "intent to arouse or gratify the sexual desire of any person." It

3

finally stated that "[a] person acts intentionally . . . with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." The jury convicted appellant on September 23, 2010, and the trial court sentenced him to 30 years in prison.

## II.    ISSUES PRESENTED

In his first and second issues, appellant contends that the evidence was legally and factually insufficient to support the jury's finding that (1) he committed two or more acts of abuse over a period of 30 or more days; and (2) both acts occurred on or after September 1, 2007, the effective date of the statute under which he was convicted. In his third issue, he argues that the trial court failed to properly instruct the jury on the culpable mental state required for continuous sexual abuse of a young child; specifically, he argues that this offense requires an element of intent beyond that required for each individual act of indecency committed.

## III.    ANALYSIS

### A.    Evidentiary Sufficiency

Texas courts no longer recognize factual and legal sufficiency as separate bases for reversal in criminal cases. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.); *Ruiz-Angeles v. State*, 346 S.W.3d 261, 266 n.2 (Tex. App.—Houston [14th Dist.] 2011, pet. filed). In evaluating challenges to the sufficiency of the evidence, therefore, we apply a single standard of review: we consider all the evidence in the light most favorable to the verdict. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Brooks*, 323 S.W.3d at 895. If, when viewed in this light, any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt, then the evidence is sufficient to support the verdict. *Jackson*, 443 U.S. at 319; *Ruiz-Angeles*, 346 S.W.3d at 266.

A person commits the offense of continuous sexual abuse of a young child, as applicable here, if (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse; and (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age. TEX. PENAL CODE ANN. § 21.02(b). An "act of sexual abuse" includes, as relevant here, an act of indecency with a child under Section 21.11(a)(1) of the Penal Code if the actor committed the offense in a manner other than by touching, including touching through clothing, the breast of a child. *Id.* § 21.02(c)(2). Under Section 21.11(a)(1), a person commits the offense of indecency with a child if the person engages in sexual contact with the child or causes the child to engage in sexual contact. *Id*. § 21.11(a)(1). "Sexual contact" means the following acts, if committed with the intent to arouse or gratify the sexual desire of any person: (1) any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child; or (2) any touching of any part of the body of a child, including touching through clothing, with the anus, breast, or any part of the genitals of a person. *Id.* §21.11(c). If a jury is the trier of fact, members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. *Id.* § 21.02(d). The jury need only agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse. *Id.* A person may be convicted of continuous sexual abuse only if all elements of the offense occurred on or after September 1, 2007. Act of May 18, 2007, 80th Leg., R.S., ch. 593, § 4.01(a), 2007 Tex. Gen. Laws 1120, 1148.

Appellant argues that even if the jury concluded that the incident at Jacqueline Smith's house occurred 30 or more days before the first or second incidents at Sun Suites, it lacked sufficient evidence to conclude that the incident at Ms. Smith's house occurred on or after September 1, 2007. Appellant cites his own testimony that he stayed with J.F.R. at Ms. Smith's house only once—in March 2007, some six months before the effective date of the statute. However, there is evidence that appellant was living at Ms. Smith's house

5

in the "fall of 2007" and that J.F.R. stayed there with him alone. J.F.R. testified that he stayed there alone with appellant on weekends while appellant was living there that fall, and his testimony implied that the first instance of abuse was on one of these occasions.[1] While appellant denied that he had stayed at Ms. Smith's house with J.F.R. on any occasion other than in March 2007, Nicole testified that appellant would often pick up J.F.R. and one of his brothers on weekends and that "[s]ometimes they went to [Ms. Smith's] house." The State notes that "[i]n 2007, autumn did not start until September 23 and ended December 21." It would not, therefore, have been irrational for the jury to conclude that the "fall" incident occurred on or after September 1. *See Smith v. State*, 340 S.W.3d 41, 48 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (accepting September 22 as the last day of summer 2007 for purpose of 30-day calculation where complainant described abuse as beginning during "the summer" of that year).

The second set of incidents occurred at a Sun Suites location in Houston. If the evidence is sufficient to show that one or both of these incidents occurred 30 or more days after the incident in the "fall of 2007," then the evidence supports appellant's conviction. Officer Barnes recovered receipts showing that appellant stayed at the Sun Suites three times in late January and early February of 2008. The State notes that even the earliest of these dates, January 25–26, 2008, was more than 30 days after December 21, 2007, when autumn ended that year. Viewed in the light most favorable to the verdict, the evidence is sufficient to show that the second or third incidents (at Sun Suites) occurred 30 or more days after the first incident (at Ms. Smith's house). Given this conclusion, it is unnecessary to consider whether the fourth incident of abuse—that alleged to have occurred in the Dallas area—occurred 30 or more days after the second or third incidents at the Sun Suites in Houston. We overrule appellant's first two issues.

---

[1]     On cross-examination, J.F.R. testified that he did not remember when this event occurred, even when asked if it could have happened in 2006. Nonetheless, we resolve any inconsistencies in the testimony in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). We defer to the jury's determination of the weight to be given contradictory evidence. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000).

## B.     Jury-Charge Error

Appellant next argues that the trial court failed properly to instruct the jury on the culpable mental state required for continuous sexual abuse of a young child.   When reviewing an alleged jury-charge error, we must first determine whether error actually exists in the charge.   *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).   If error is found, we then determine if it caused sufficient harm to require reversal.   *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1994) (op. on reh'g).   When there has been a timely objection to an improper jury charge, we must reverse if we find "some harm" to the defendant.   *Id.*   If no proper objection was made at trial, we reverse only if the record shows "egregious harm" to the defendant.   *Id.*   Here, appellant submitted a written proposal to instruct the jury that "a person commits [continuous sexual abuse of a young child] if, *with criminal intent*, during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse."   The trial court rejected this proposed instruction.   Appellant therefore argues that he timely objected to the jury charge for not requiring a culpable mental state for the offense and obtained an adverse ruling on his objection.

Appellant contends that the charge did not properly set forth the culpable mental state required for continuous sexual abuse of a young child.   He argues that Section 21.02 does not contain a culpable mental state and that Section 6.02 of the Penal Code requires the addition of one. *See* TEX. PENAL CODE ANN. § 6.02(b) (requiring a culpable mental state unless the definition of an offense plainly dispenses with any mental element). The trial court instructed the jury that indecency with a child, the underlying act in this case, requires intent to "engag[e] in sexual contact with the child or caus[e] the child to engage in sexual contact" and also defined "sexual contact" as requiring "intent to arouse or gratify the sexual desire of any person."   Despite these instructions, appellant argues that the offense of continuous sexual abuse requires an additional culpable mental state not included in the jury charge—one linked to the unique *actus reus* (guilty act) of the offense,

7

which he characterizes as a "pattern and duration" of abuse distinct from each act of abuse itself. If continuous sexual abuse is an *actus reus* distinct from its constituent acts of indecency, appellant reasons, then the Penal Code requires an additional culpable mental state. *See id.* ("If the definition of an offense does not prescribe a culpable mental state, a culpable mental state is nevertheless required unless the definition plainly dispenses with any mental element."). Because the trial court failed to instruct the jury about this requirement, appellant concludes that the jury did not find him guilty of each element of the offense.

Appellant relies primarily on *Jacobsen v. State*, 325 S.W.3d 733, 736 (Tex. App.—Austin 2010, no pet.), to support the proposition that "the pattern and duration (of continuous sexual abuse) constitute the *actus reus* of the offense." In *Jacobsen*, the court entertained a constitutional challenge to the jury-unanimity provision set forth in section 21.02(d). *See* TEX. PENAL CODE ANN. §21.02(d) (members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed; they need only agree unanimously that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse). The appellant in *Jacobsen* argued that section 21.02(d) violates the jury-unanimity guarantee of the Texas Constitution because jurors may convict a defendant for continuous sexual abuse even though they do not agree unanimously about specific underlying acts of sexual abuse or the exact dates on which they occurred. *Jacobsen*, 325 S.W.3d at 35; *see Ngo*, 175 S.W.3d at 745 (recognizing constitutional requirement in felony cases that each juror agree that defendant commit same specific criminal act) (citing TEX. CONST. art. V, §13). The court rejected the constitutional challenge, holding that "[u]nder the plain language of section 21.02, it is the commission of two or more acts of sexual abuse over the specified time period—that is, the pattern of behavior or the series of acts—that is the *actus reus* element of the offense *as to which the jurors must be unanimous in order to convict.*" *Jacobsen*, 325 S.W.3d at 737 (emphasis added). Appellant takes too literally the court's statement that the "pattern of

behavior" is the *actus reus* of continuous sexual abuse. The emphasized language shows that the court's intent was to explain why a jury that agrees unanimously that a pattern of abuse has occurred, but does not agree on precisely which events occurred or the exact dates of their occurrence, may still be called "unanimous" for constitutional purposes. *See id.* The court explained that "[t]he individual acts of sexual abuse that make up this pattern of behavior or series of acts are not themselves elements of the offense, but are merely evidentiary facts, the manner and means by which the *actus reus* element is committed." *Id.* This holding does not mean that continuous sexual abuse features some *actus reus independent* of the individual acts of abuse constituting the pattern, which would then require its own culpable mental state. It means merely that agreement that a series of abusive acts occurred may be "unanimous" even without agreement on any one act that is part of the series.

Appellant's misreading of *Jacobsen* also leads him to misinterpret section 21.02. Because he begins with the false premise that continuous sexual abuse somehow involves an *actus reus* independent of the commission of two or more individual acts of abuse within a specified time frame, appellant interprets section 21.02 as failing to include a culpable mental state for this "distinct" offense. Section 21.02, however, is defined in terms of other acts that *by their terms* require a culpable mental state. *See* TEX. PENAL CODE ANN. §21.02(c) (listing offenses which may underlie continuous sexual abuse). Section 21.02's express requirement that these acts be committed is therefore functionally indistinguishable from an express requirement of the mental state essential to their commission. Section 21.02 need not prescribe some additional mental state because its *actus reus* is merely the repeated commission of acts already requiring culpable mental states. It follows that section 6.02, which by its terms applies only to statutes that do not set forth a culpable mental state, is inapplicable to section 21.02.

Moreover, the legislature expressly prescribed additional intent elements for some of the subsidiary acts underlying continuous sexual abuse. *See id.* § 21.02(c)(1)

9

(aggravated kidnapping may form basis of continuous sexual abuse if committed with intent to violate or abuse victim sexually); § 21.02(c)(5) (burglary may come under section 21.02 if committed with intent to commit other listed offenses). That the legislature inserted language requiring a particular culpable mental state for some of these underlying acts, but did not add language assigning an additional culpable mental state to the offense of continuous sexual abuse as a whole, indicates that it did not intend to require an additional mental state. *See Lomax v. State*, 233 S.W.3d 302, 304 (Tex. Crim. App. 2007) ("It is significant and largely dispositive that [the felony-murder subsection of the murder statute] omits a culpable mental state while the other two subsections [of the murder statute] expressly require a culpable mental state."); *Long v. State*, 931 S.W.2d 285, 291 (Tex. Crim. App. 1996) ("By prescribing an additional mental state in connection with other divisions [of a statute], but omitting a mental state in [one division], the legislature plainly dispensed with any additional mental state in [that division] that might otherwise be required.").

Because we conclude that no error existed in the jury charge, we overrule appellant's third issue.

## IV. CONCLUSION

Having concluded that (1) the evidence in this case is sufficient to show that appellant abused J.F.R. at least twice within a period of 30 or more days and both incidents were on or after September 1, 2007; and (2) the trial court properly instructed the jury on the culpable mental state required for conviction, we affirm the trial court's judgment.


/s/     Justice Tracy Christopher


Panel consists of Chief Justice Hedges and Justices Anderson and Christopher.
Publish— TEX. R. APP. P. 47.2(b).