**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-22-00419-CR**
**NO. 09-22-00420-CR**

_____

**JOSE JUAN APARICIO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause Nos. 21-10-14776-CR and 22-08-11322-CR**

_____

**MEMORANDUM OPINION**

Jose Juan Aparicio appeals his convictions for the offense of continuous sexual abuse of a child in trial court cause number 21-10-14776-CR and the offense of aggravated sexual assault of a child in trial cause number 22-08-11322-CR. *See* Tex. Penal Code Ann. §§ 21.02(b), 22.021(a)(2)(B).[1] In six issues, Aparicio

---

[1] We cite to the current versions of the statutes because the subsequent amendments do not affect the outcome of this appeal.

1

complains about the sufficiency of the evidence, denial of his motion for mistrial, admission of hearsay testimony, and admission of evidence. For the reasons discussed below, we affirm the trial court's judgments.

## BACKGROUND

In trial cause number 21-10-14776-CR, a grand jury indicted Aparicio for the offense of continuous sexual abuse of a child occurring from on or about May 27, 2014 through May 27, 2016, alleging that he committed two or more acts of sexual abuse against L.H.,[2] a child who was younger than fourteen years of age, namely, aggravated sexual assault of a child by then and there intentionally or knowingly causing Defendant's sexual organ to contact or penetrate the sexual organ of L.H. *See id.* § 21.02(b). In trial cause number 22-08-11322-CR, a grand jury indicted Aparicio for the offense of aggravated sexual assault of a child, alleging that on or about February 28, 2011, he intentionally or knowingly caused his finger to penetrate

---

[2] We refer to the crime victims by their initials and to their family members by their relationship or pseudonyms to protect their privacy. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's identity and privacy throughout the criminal justice process").

the sexual organ of L.C., a child younger than 6 years of age. *See* Tex. Penal Code Ann. § 22.021(a)(2)(B). The two cases were tried together before the same jury.

Amy testified she is L.C.'s and L.H.'s cousin and that Aparicio is married to their grandmother. Amy testified that L.C. and L.H. were close when they were younger but have grown apart since becoming teenagers. Amy explained that in 2020, she was at a family Christmas party when L.C., who was abnormally standoffish, told her Aparicio touched her inappropriately when she was five years old. Amy explained that L.C. told her Aparicio touched the inside of her vagina with his hands when she was taking a shower at his house. Amy testified that L.C. was upset and scared when she told her about the abuse. Amy testified that in March 2021, L.H.'s mother called and told her about L.H. and Aparicio, and Amy then told L.H.'s mother and L.C.'s mother about L.C.

L.C.'s mother testified that L.C. called Aparicio "[g]randpa." L.C.'s mother testified that she moved in with her mother and Aparicio when L.C. was about four years old, and she and L.C. lived there for about a year. L.C.'s mother explained that L.C. was "real reserved[]" and "shy[]" around Aparicio, and L.C. rarely saw Aparicio after they moved out. L.C.'s mother recalled having to tell L.C. to give Aparicio a hug at the 2020 Christmas party, which was one of the few times L.C. had been around Aparicio since they moved out, and at that time, L.C.'s mother did not know something was wrong. L.C.'s mother explained that one time when they

3

visited Aparicio and grandmother, L.C.'s mother found it "odd[]" that L.C. locked the door at night.

L.C.'s mother testified that she learned about the abuse in March 2021, when grandmother and L.H.'s mother visited her home. L.C.'s mother explained that after one of her daughters showed L.H.'s mother a TikTok video showing L.H. outcrying about Aparicio's abuse, L.H.'s mother called Amy, who was confused and thought they were talking about L.C. L.C.'s mother testified that is when she found out that L.C. may also be a victim. When L.C.'s mother asked L.C. if anything had happened with grandpa, L.C. was surprised, cried, and stated "Yes, like, how did I find out." L.C.'s mother explained that L.C. was crying when she described "bits and pieces[]" about what happened with Aparicio, and she testified that L.C. was cutting herself and did not want anybody to find out. L.C.'s mother reported the abuse to the police and stated that L.C. did not know about L.H.'s abuse.

L.H.'s mother testified that L.H. was about eleven years old when they moved in with grandmother and Aparicio, and L.H. was about thirteen or fourteen years old when they moved out. L.H.'s mother testified that in March 2021, she was at L.C.'s mother's house when she saw L.H.'s TikTok video. L.H.'s mother explained she called Amy, who only knew about L.C. L.H.'s mother testified that L.H. told her the first incident happened a couple of months after they moved in and that the abuse happened multiple times and lasted about a year. L.H.'s mother testified that L.H.

4

told her about one incident when L.H. was sleeping in the second living room and Aparicio got on top of her and put his penis into her vagina. L.H.'s mother testified that L.H. described a second incident when L.H. went to work with Aparicio, who took her to a hotel, removed her clothes, and put his penis in her vagina. L.H.'s mother testified that L.H. was afraid to tell anyone about the abuse because Aparicio threatened to harm people if she told.

Mackenzie Phillips, a forensic interviewer, testified she conducted an interview of L.C., who outcried that her grandfather, Aparicio, sexually abused her. Phillips testified that L.C. described an event that occurred in her bedroom around the time of her fifth birthday party. Phillips explained that L.C. told her that Aparicio came into her bedroom in the middle of the night, touched her butt and boobs, took her clothes off, put a pillow on her face, and stuck his fingers inside her private part she used to pee. Phillips testified that L.C. told her that the incident made her feel "like she wasn't a little kid anymore." Phillips testified that L.C. described a second incident that occurred in the bedroom after her birthday, stating that Aparicio took her clothes off, stuck his fingers in her middle part, and put her hand on his penis and moved her hand back and forth until she felt something wet on her stomach. Phillips testified that L.C., who was around fifteen years old when the interview occurred, reported that she used to cut herself on her thighs because of the abuse, which hurt because Aparicio was a father figure.

5

L.C. testified when she was four or five years old she lived with her grandmother and grandpa, Aparicio, who she looked up to as a second dad. L.C. testified that two or three weeks after they moved in with her grandparents, Aparicio came into the bathroom while she was undressing to take a shower. L.C. explained that Aparicio played with her breasts and touched the inside of her vagina with his fingers. L.C. testified that she thought "it was normal[]" and that Aparicio stopped when he heard the front door open. L.C. explained she "didn't say nothing[]" because Aparicio told her he would hurt her mom and grandmother if she did. L.C. testified there were other bathroom incidents.

L.C. testified about incidents that occurred in her bedroom. L.C. testified that a few days before her fifth birthday Aparicio came into her bedroom when the lights were off, undressed her, played with her breasts, put a pillow on her face, and put his fingers inside her vagina. L.C. stated that it hurt, and she cried and "didn't know what to do." L.C. explained there was something wet on her hands because he made her play with his "'private part[,]'" and then he stopped and left. L.C. testified that on her birthday, Aparicio came into her bedroom, put her on her bed, undressed her, played with her boobs, put his fingers in her vagina, and told her that he would buy her whatever she wanted if she did not say anything. L.C. stated there were more bedroom incidents, but it was "difficult" to remember how many. L.C. testified that the bedroom and bathroom incidents occurred "the whole time that we lived there[,]"

6

and she continued to "act normal[]" because she was scared and did not want him to hurt her mother and grandmother.

L.C. explained that after they moved out, she did not have a lot of contact with Aparicio, so in 2020, she was anxious when he came to her house for Christmas. L.C. testified that one of her cousins knew something was wrong with her, and she told him that she did not want to be around Aparicio. L.C. then told her cousin, Amy, that Aparicio abused her, and L.C. was scared and asked Amy not to tell anybody because Aparicio was there. L.C. explained that since 2011, she had not told anyone about the abuse, and after they moved, she got depression and anxiety and started cutting herself. L.C. testified she did not know Aparicio had also abused L.H. until she saw L.H.'s TikTok video.

Mary Phillips, a forensic interviewer, testified about her interview of L.H and explained that L.H. disclosed sexual abuse and delayed outcrying because she was scared. Hannah Scism, a psychotherapist, testified that she counseled L.H. and provided trauma focus services. Scism testified that L.H. disclosed sexual abuse by her grandfather, and Scism diagnosed L.H. with post-traumatic stress disorder ("PTSD"). Scism explained that during L.H.'s intake, she completed a symptom checklist with L.H., who stated she was there because her grandpa molested her and provided information about the symptoms she was experiencing. Scism testified that

L.H. came to seven sessions and then withdrew from therapy to focus on her senior year and pregnancy.

L.H. testified that she moved in with her grandmother and Aparicio in March 2014 when she was around eleven or twelve years old. L.H. explained that a couple of months after moving in, Aparicio came into the living room early in the morning, put his hand over her mouth, took off her clothes, and put his penis in her vagina. L.H. testified that Aparicio stopped after he came and threw money at her and left. L.H. testified the abuse happened multiple times in the second living room. L.H. explained that the last incident happened when Aparicio wanted her to go to work with him, but instead, he took her to a hotel, took off her clothes, and inserted his penis inside her vagina. L.H. testified it was painful and she fought against him.

L.H. explained that the abuse occurred for about six months, and she was scared because Aparicio threatened to hurt her mother and grandmother if she told. L.H. never told anyone after they moved because she never planned to go back. L.H. testified that she quit counseling because "[i]t was too painful." L.H. explained that in March 2021, she made the TikTok video because she "needed to let it off my chest, and I needed to encourag[e] other girls to come out[.]"

Stephanie Bright, a sexual assault nurse examiner (SANE), testified she performed a SANE exam on L.H., who was seventeen years old. Bright explained that L.H. described being assaulted by her grandfather on multiple occasions after

8

she fell asleep. Bright testified that L.H. disclosed penis to vagina penetration by her grandfather and that the last incident occurred when she was about thirteen years old.

After the State rested its case, Aparicio moved for a directed verdict in both cases, arguing the State failed to offer evidence from which the jury could find beyond a reasonable doubt that he committed the charged offenses. The trial court denied Aparicio's motion for directed verdict in each cause. In trial cause number 21-10-14776-CR, the jury found Aparicio guilty of continuous sexual abuse of a child. In trial cause number 22-08-11322-CR, the jury found Aparicio guilty of aggravated sexual assault of a child. In the continuous sexual abuse of a child case, the trial court sentenced Aparicio to seventy-five years of confinement. In the aggravated sexual assault case, the trial court sentenced Aparicio to fifty years of confinement. The trial court ordered the sentences to run concurrently.

**ANALYSIS**

Sufficiency of the Evidence and Motion for Directed Verdict

In issue four, Aparicio complains the trial court erred in denying his Motion for Directed Verdict. In issues five and six, Aparicio complains the evidence was insufficient to support his convictions for continuous sexual abuse of a child and aggravated sexual assault of a child. We first address Aparicio's challenges to the sufficiency of the evidence supporting the jury's verdict because, if sustained, it

9

would result in rendition of a judgment of acquittal. *See Price v. State*, 502 S.W.3d 278, 281 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *see also* Tex. R. App. P. 47.1. We address these issues together because we treat a complaint about the denial of a motion for directed verdict "as a challenge to the legal sufficiency of the evidence." *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App 1996); *Franco v. State*, No. 09-22-00027-CR, 2023 WL 8609289, at *6 (Tex. App.— Beaumont, Dec. 13, 2023, pet. ref'd) (mem. op., not designated for pub.).

We review complaints of legal insufficiency under the standard in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). *See Fernandez v. State*, 479 S.W.3d 835, 837 (Tex. Crim. App. 2016). Under *Jackson*, we review all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *see Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). We defer to the jury's responsibility to resolve conflicts in testimony, weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). If the record contains conflicting inferences, we must presume that the factfinder resolved such facts in favor of the verdict and defer to that resolution. *Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The jury as factfinder is the sole judge of the weight of the evidence and credibility of the witnesses, and

10

it may believe all, some, or none of the testimony presented by the parties. *See Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018); *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995)). The appellate court does not reweigh the evidence or determine the credibility of the evidence, nor does it substitute its own judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

We treat direct and circumstantial evidence equally and consider the "'combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Clayton*, 235 S.W.3d at 778 (quoting *Hooper*, 214 S.W.3d at 16-17). Each fact need not point directly and independently to the guilt of the defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Temple v. State,* 390 S.W.3d 341, 359 (Tex. Crim. App. 2013); *Hooper*, 214 S.W.3d at 13; *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The testimony of a child victim, standing alone and without corroboration, is sufficient to support a conviction for indecency with a child. Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1) (providing that child's testimony alone is sufficient to support a conviction for a sexual offense when the child is under the age of seventeen at the time of the alleged offense); *Chasco v. State*, 568 S.W.3d 254, 258 (Tex. App.—Amarillo 2019, pet. ref'd).

11

In issue five, Aparicio complains the evidence is insufficient to support his conviction for aggravated sexual assault of a child. A grand jury indicted Aparicio for the offense of aggravated sexual assault of a child, alleging that on or about February 28, 2011, he intentionally or knowingly caused his finger to penetrate the sexual organ of L.C., a child younger than 6 years of age. *See* Tex. Penal Code Ann. § 22.021(a)(2)(B). A person commits the offense of aggravated sexual assault of a child if the person intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means. *Id.* § 22.021(a)(1)(B)(i).

L.C. testified she was four or five years old when she lived with Aparicio, and two or three weeks after they moved in, Aparicio touched the inside of her vagina with his fingers while she was undressing to take a shower. L.C. also described two incidents that occurred in her bedroom around her fifth birthday. During both bedroom incidents, L.C. testified that Aparicio put his fingers inside her vagina. L.C. explained that the bedroom and bathroom incidents occurred "the whole time" she lived with Aparicio.

L.C.'s testimony alone was sufficient to support the verdict. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1); *Chasco*, 568 S.W.3d at 258. L.C.'s testimony was corroborated by Amy, who testified that L.C. told her Aparicio touched the inside of her vagina with his hands when she was taking a shower at his house. Phillips also testified that during her forensic interview, L.C. outcried that Aparicio

12

sexually abused her and described two incidents when Aparicio stuck his fingers inside her private part she used to pee.

The jury, in its role as factfinder, could have found L.C.'s testimony was credible. The jury could have believed L.C.'s testimony that she was around five years old when Aparicio put his fingers inside L.C.'s vagina during the shower and bedroom incidents. Viewing the evidence in the most favorable to the verdict and deferring to the jury's role as factfinder to determine the credibility of the witnesses and the weight to give their testimony, we conclude that a reasonable factfinder could have found the essential elements of the offense beyond a reasonable doubt. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1); *Febus*, 542 S.W.3d at 572; *Brooks*, 323 S.W.3d at 902 n.19; *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13; *Chasco*, 568 S.W.3d at 258. We overrule issue five.

In issue six, Aparicio complains the evidence was insufficient to support his conviction for continuous sexual abuse of a child. A grand jury indicted Aparicio for the offense of continuous sexual abuse of a child occurring from on or about May 27, 2014 through May 27, 2016, alleging that he committed two or more acts of sexual abuse against L.H., a child who was younger than fourteen years of age, namely, aggravated sexual assault of a child by then and there intentionally or knowingly causing Defendant's sexual organ to contact or penetrate the sexual organ

13

of L.H. *See* Tex. Penal Code Ann. § 21.02(b), (c)(4). A person commits the offense of continuous sexual abuse of a child if:

> (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

> (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is . . . a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense[.]

*Id.* § 21.02(b).

Section 21.02 of the Penal Code defines "act of sexual abuse" as including, among other things, an act that constitutes the offense of "aggravated sexual assault under Section 22.021[.]" *Id.* § 21.02(c)(4). A person commits the offense of aggravated sexual assault of a child under Section 22.021 if the person intentionally or knowingly causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor. *Id.* § 22.021(a)(1)(B)(iii). The State need not prove the exact dates of the abuse, only that "there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration." *Brown v. State*, 381 S.W.3d 565, 574 (Tex. App.—Eastland 2012, no pet.); *Lane v. State*, 357 S.W.3d 770, 773-74 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd.); *see also* Tex. Penal Code Ann. § 21.02(d) ("[M]embers of the jury are not required to agree unanimously on which specific

14

acts of sexual abuse were committed by the defendant or the exact date when those acts were committed.").

L.H. testified that she moved in with Aparicio when she was around eleven or twelve years old, and a couple of months after she moved in, Aparicio came into the living room in the early morning, took off her clothes, and put his penis in her vagina. L.H. explained that the living room incidents happened multiple times and the abuse occurred for about six months. L.H. also described the last incident, which occurred when Aparicio took her to a hotel and inserted his penis inside her vagina. L.H.'s testimony alone was sufficient to support the verdict. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1); *Chasco*, 568 S.W.3d at 258.

L.H.'s testimony was corroborated by the SANE, who testified that when she performed L.H.'s exam, L.H. described being assaulted by her grandfather on multiple occasions. The SANE testified that L.H. disclosed penis-to-vagina penetration by her grandfather and that the last incident occurred when she was about thirteen years old. L.H.'s mother testified that L.H. told her the abuse happened multiple times and that L.H. described an incident in the living room when Aparicio put his penis into her vagina. L.H.'s mother also testified that L.H. described an incident at a hotel when Aparicio put his penis in her vagina. The forensic interviewer testified that L.H. disclosed sexual abuse, and L.H.'s psychotherapist

15

testified that she diagnosed L.H. with PTSD after L.H. disclosed she was molested by her grandpa.

The jury, in its role as factfinder, could have found L.H.'s testimony was credible. The jury could have believed L.H.'s testimony that Aparicio put his penis in her vagina during the incidents in the living room and hotel and that the abuse started when she was around eleven or twelve years old and happened multiple times for about six months. The jury also could have believed that the alleged offenses occurred prior to the date of the indictment and continued over a six-month period. Based on the evidence at trial, the jury could have concluded that Aparicio, "during a period that is 30 or more days in duration, committed two or more acts of sexual abuse." *See* Tex. Penal Code Ann. § 21.02(d); *Lane*, 357 S.W.3d at 773-74. Viewing the light most favorable to the verdict and deferring to the jury's authority to determine the credibility of the witnesses and the weight to give their testimony, we conclude that a reasonable factfinder could have found the essential elements of the offense beyond a reasonable doubt. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1); *Febus*, 542 S.W.3d at 572; *Brooks*, 323 S.W.3d at 902 n.19; *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13; *Chasco*, 568 S.W.3d at 258; *Lane*, 357 S.W.3d at 774. We overrule issue six. Having concluded there is sufficient evidence to support Aparicio's convictions for continuous sexual abuse of a child and aggravated sexual assault of a child, we also conclude the trial court did not err in

16

denying his Motion for Directed Verdict. *See Franco*, 2023 WL 8609289, at *6. We overrule issue four.

Admission of Outcry Testimony

In issue one and two, Aparicio complains the trial court abused its discretion by overruling his hearsay objections and allowing Amy and Mackenzie Phillips to testify as outcry witnesses to L.C.'s statements to prove one incident of aggravated sexual assault of a child. Aparicio argues the error affected his substantial rights because Phillips "detailed, crude, and graphic[]" testimony had a substantial impact on the jury's verdict. The State argues the trial court did not abuse its discretion by allowing Amy and Phillips to testify as outcry witnesses because L.C. described separate and distinct incidents to each witness.

We review a trial court's decision to designate a witness as an outcry witness under an abuse of discretion standard. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *Rosales v. State*, 548 S.W.3d 796, 806 (Tex. App.—Houston [14th Dist.] 2018, pet. ref'd). An appellate court will uphold the trial court's designation of the witness if the decision is supported by the evidence. *Garcia*, 792 S.W.2d at 92. We will not find that an abuse of discretion occurred if the trial court's decision concerning the designation of the outcry witness was a decision that falls within the zone of reasonable disagreement. *Rosales*, 548 S.W.3d at 806.

Under Rule 802 of the Texas Rules of Evidence, hearsay is not admissible unless it falls within an exception to the hearsay rule. Tex. R. Evid. 802; *Hayden v. State*, 928 S.W.2d 229, 231 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd). Article 38.072 provides a statutory exception to the rule against hearsay for prosecutions of certain sexual crimes committed against a child younger than fourteen years of age. *See* Tex. Code Crim. Proc. Ann. art. 38.072 §§ 1, 2(b); *Hayden*, 928 S.W.2d at 231. Both L.C. and L.H. were younger than fourteen when the alleged abuse occurred. Article 38.072 allows the admission of the child victim's out-of-court statement so long as that statement is a description of the offense and is offered into evidence by the first adult the victim told of the offense. *Sanchez v. State*, 354 S.W.3d 476, 484-85 (Tex. Crim. App. 2011).

As the proponent of the evidence, the State has the burden to establish the elements of article 38.072 for the testimony to be admissible. *Hayden*, 928 S.W.2d at 231. Specifically, the proponent must establish that the statements (1) were made by the child against whom the offense was allegedly committed; and (2) were made to the first person, eighteen years of age or older, other than the defendant, to whom the child made a statement about the offense. *See* Tex. Code Crim. Proc. Ann. art. 38.072 § (2)(a). The statute requires the trial court to conduct a hearing outside the presence of the jury to determine whether the victim's out-of-court statement is reliable based on the time, content, and circumstances of the statement. *Id.* § 2(b)(2);

18

*Sanchez*, 354 S.W.3d at 484-85. Because the child's statement must describe the alleged offense in some discernible manner and "be more than words which give a general allusion that something in the area of child abuse was going on[,]" the evidence must clearly show that the child described the offense to the outcry witness. *Garcia*, 792 S.W.2d at 91. The proper outcry witness is the first adult to whom the child tells the details of how, when, and where the sexual abuse occurred. *Reyes v. State*, 274 S.W.3d 724, 727 (Tex. App.—San Antonio 2008, pet. ref'd).

More than one outcry witness can testify at trial about different events and offenses because outcry testimony is event specific. *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011); *Williams v. State*, No. 09-19-00276-CR, 2021 WL 358403, at *4 (Tex. App.—Beaumont Feb. 3, 2021, no pet.) (mem. op., not designated for publication). A trial court does not abuse its discretion by admitting testimony from multiple outcry witnesses that concern different acts of abuse. *See Polk v. State*, 367 S.W.3d 449, 453 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd); *see also Divine v. State*, 122 S.W.3d 414, 419-20 (Tex. App.—Texarkana 2003, pet. ref'd) (involving a child's outcry to multiple people about different acts that occurred in the same event). Here, the State charged Aparicio with aggravated sexual assault of a child, specifically alleging Aparicio intentionally or knowingly caused his finger to penetrate L.C.'s sexual organ. *See* Tex. Penal Code Ann. § 22.021(a)(2)(B).

The record shows L.C.'s outcry to Amy included specific details about an incident that occurred when L.C. was in the bathroom showering at Aparicio's house. Amy explained that during their 2020 family Christmas party, L.C. told her that when L.C. was five years old, Aparicio touched the inside of her vagina with his hands while she was showering. Amy testified that L.C. was around fourteen years old when she told Amy about the abuse. Aparicio objected to Amy's testifying as an outcry witness and argued that L.C.'s outcry to Amy was not sufficiently detailed. The trial court found that L.C.'s statements "were detailed enough," and allowed Amy to testify as an outcry witness.

The State also presented Phillips as an outcry witness to testify about L.C.'s outcry, in which L.C. stated that around her fifth birthday, Aparicio came into her bedroom in the middle of the night, touched her butt over her clothes, took off her clothes, and put his fingers inside her private part that she used to pee. Phillips testified that L.C. described a second bedroom incident that occurred around the same time when Aparicio put his fingers in her middle part and put her hands on his penis. Phillips explained that L.C. was fifteen years old when L.C. told Phillips about these events during the forensic interview.

Defense counsel objected to Phillips's testimony because L.C.'s mother had already testified about the digital penetration "alleged in the indictment, both in the bathroom on multiple occasions, as well as in the bedroom when she was by herself."

20

Defense counsel argued that Phillips's testimony was bolstering because L.C.'s mother's testimony established the offense with sufficient detail. The State argued Amy was the only outcry witness who testified about the bathroom incident, and that it was offering Phillips's testimony because it did not offer L.C.'s mother as an outcry witness because her testimony did not provide enough detail to qualify. Defense counsel agreed that the State did not offer L.C.'s mother as an outcry witness and that he had notice of Phillips being a potential outcry witness. The trial court found that Phillips was properly designated, and that the designation of a proper outcry witness is "event specific" when a child is victim to more than one instance of sexual assault. The trial court noted that the indictment only had one event concerning L.C, and the State argued that it would make an election before the case concluded. The trial court found that Phillips was a sufficient outcry witness and allowed Phillips to testify about L.C.'s description of the bedroom incidents. The record shows that during cross-examination, the State objected to defense counsel's questioning Phillips about L.C.'s description of the shower incident because it was outside the scope of Phillips's outcry testimony. After discussing the matter outside the jury's presence, defense counsel agreed to change his line of questioning.

The record shows that Amy and Phillips testified about different events and that L.C. did not make any statements regarding the specific details that occurred in

21

the bedroom until she spoke with Phillips during the forensic interview. *See Lopez*, 343 S.W.3d at 140; *Williams*, 2021 WL 358403, at *4 ; *Rodgers v. State*, 442 S.W.3d 547, 552 (Tex. App.—Dallas 2014, pet. ref'd) (determining that forensic interviewer was proper outcry witness when child's allegations during interview made it clear that the alleged offense occurred). Based on this record, we conclude that the trial court did not abuse its discretion by determining that Amy and Phillips were both proper outcry witnesses as contemplated by article 38.072 and allowing them to testify about different events meeting the description set out in the indictment. *See* Tex. Code Crim. Proc. Ann. art. 38.072; *Garcia*, 792 S.W.2d at 92; *Rodgers*, 442 S.W.3d at 552; *Polk*, 367 S.W.3d at 453. Moreover, the trial court was not required to grant a request for election prior to the State closing its case-in-chief. *See Phillips v. State*, 193 S.W.3d 904, 909 (Tex. Crim. App. 2006). We overrule issue one.

In issue two, Aparicio complains the trial court abused its discretion by overruling his hearsay objection and allowing L.H.'s mother to testify as an outcry witness regarding the allegation of continuous sexual abuse of L.H. Aparicio argues that because L.H. published a TikTok video in which she told the TikTok community that Aparicio sexually assaulted her, L.H.'s mother was not the first person over eighteen years of age who L.H. outcried to about the offense. Aparicio argues that the erroneous admission of L.H.'s mother's testimony affected his substantial rights. The State argues Aparicio failed to preserve his complaint for our review.

22

The admission of hearsay must be preserved with a timely and specific objection. *Moore v. State*, 935 S.W.2d 124, 130 (Tex. Crim. App. 1996); *Comeaux v. State*, No. 09-07-058-CR, 2007 WL 4723364, at *1 (Tex. App.—Beaumont Jan. 16, 2008, no pet.) (mem. op., not designated for publication) (holding defendant waived error by failing to object to testimony regarding details of the outcry); *Reynolds v. State*, 227 S.W.3d 355, 370 (Tex. App.—Texarkana 2007, no pet.) (stating that defendant must object when the State offers an out-of-court statement pursuant to article 38.072); *see* Tex. R. App. P. 33.1. The record shows that at the State's request, the trial court conducted an outcry hearing outside the presence of the jury to determine the reliability of L.H.'s outcry to her mother. L.H.'s mother testified that after she saw the TikTok video, she talked to L.H., who told her that right before she turned eleven years old, Aparicio came into the second living room in the middle of night and put his penis in her vagina. L.H.'s mother explained that L.H. also told her that one time she went to work with Aparicio, who took her to a hotel where he put his penis into her vagina. L.H. told her mother the abuse "happened multiple times" until she turned twelve years old, and that the first incident was in May or June of 2014 when they moved in with Aparicio.

On redirect, L.H.'s mother testified that she was the first adult who L.H. told about the details of the abuse, and L.H. was "[v]ery nervous[]" when she told her. When the State concluded its redirect examination of L.H.'s mother and passed the

23

witness, defense counsel stated, "No objection." The record shows defense counsel failed to object, either at the outcry hearing or at trial, to L.H.'s mother being an outcry witness. Since Aparicio failed to object to L.H.'s mother's testimony as an outcry witness or challenge the details of L.H.'s outcry, he has waived his complaint for our review. *See Comeaux*, 2007 WL 4723364, at *1; *Reynolds*, 227 S.W.3d at 370. We overrule issue two.

Admission of Evidence

In issue three, Aparicio argues the trial court abused its discretion by overruling his hearsay objection and admitting evidence during the testimony of L.H.'s psychotherapist. Aparicio complains about the trial court's admission of a symptom checklist under the hearsay exception for medical diagnosis because the checklist contains notes that include information L.H. provided Scism about being molested. Aparicio argues that the State used the symptom checklist to question Scism and corroborate L.H.'s allegations of continuous sexual abuse.

We review a trial court's evidentiary ruling under an abuse of discretion standard. *See Taylor v. State*, 268 S.W.3d 571, 578-79 (Tex. Crim. App. 2008); *Potter v. State*, No. 09-21-00386-CR, 2024 WL 953228, at *8 (Tex. App.—Beaumont Mar. 6, 2024, pet. ref'd) (mem. op., not designated for publication). Texas Rule of Evidence 803(4) provides that a statement made for medical diagnosis or treatment is not excluded by the rule against hearsay when the statement "is made

24

for–and is reasonably pertinent to–medical diagnosis or treatment; and . . . describes medical history; past or present symptoms or sensations; their inception; or their general cause." Tex. R. Evid. 803(4). A therapist's expert testimony regarding a child victim's PTSD symptoms is admissible under Texas Rule of Evidence 702, and the use of a checklist as an assessment tool may contribute to the therapist's opinion that the child has PTSD and help the jury determine what weight and credibility to give the child's testimony. *See Moreno v. State*, 619 S.W.3d 754, 760-62 (Tex. App.—San Antonio 2020, no pet.); *see also* Tex. R. Evid. 702. A child's statements to a therapist are admissible under Rule 803(4) if "reasonably pertinent to medical diagnosis or treatment." *Bargas v. State*, 252 S.W.3d 876, 896-97 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd); *see* Tex. R. Evid. 803(4).

Scism explained she diagnosed L.H. with PTSD and that during the intake process, she reviewed the checklist of symptoms of trauma with L.H., who reported her grandpa molested her and she had experienced twenty symptoms on the checklist. When the State offered the checklist into evidence, Aparicio objected "to hearsay." The State argued the checklist was admissible as evidence of statements made for the purpose of medical treatment and diagnosis, and after reviewing the checklist, the trial court admitted the checklist into evidence.

Since the checklist was a summary of L.H.'s statements regarding her symptoms and the statements from L.H. were made for the purpose of Scism's

25

medical diagnosis and treatment of L.H., we conclude the trial court did not abuse its discretion by admitting the checklist under Rule 803(4). *See Bargas*, 252 S.W.3d at 896-97; *see also* Tex. R. Evid. 803(4).[3] We overrule issue three.

## CONCLUSION

We note that the trial court's judgment in trial court cause number 22-08-11322 incorrectly states "Punishment Assessed by: JURY[.]" The record shows the trial court assessed Aparicio's punishment. Accordingly, we modify the judgment in cause number 22-08-11322 by deleting the portion of the judgment stating "Punishment Assessed by: JURY" and substitute the following: "Punishment Assessed by: COURT."

Having overruled each of Aparicio's issues, we affirm the trial court's judgments in cause numbers 21-10-14776-CR and 22-08-11322-CR.

AFFIRMED AS MODIFIED.

JAY WRIGHT
Justice

Submitted on July 24, 2024
Opinion Delivered September 11, 2024
Do Not Publish

Before Johnson, Wright and Chambers, JJ.

---

[3] We also note that the record shows Aparicio failed to object to Scism's testimony about the symptoms described by L.H. that were recorded on the checklist.