**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-23-00130-CR**
_____

**CHANCESE CHEYENNE BROWN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 19-09-12213-CR**
_____

**MEMORANDUM OPINION**

Appellant Chancese Cheyenne Brown appeals his conviction for the offense of continuous sexual abuse of a child. *See* Tex. Penal Code Ann. § 21.02(b). In two issues, Brown complains about the sufficiency of the evidence and the denial of his motion for directed verdict. For the reasons explained below, we affirm the trial court's judgment.

1

# BACKGROUND

A grand jury indicted Brown for the offense of continuous sexual abuse of a child, alleging Brown:

> did then and there, during a period that was 30 or more days in duration, to-wit: from on or about June 1, 2018 through June 1, 2019, when the defendant was 17 years of age or older, committed two or more acts of sexual abuse against [Erika],[1] a child younger than 14 years of age, namely, aggravated sexual assault of a child by then and there intentionally or knowingly causing Defendant's sexual organ to penetrate the sexual organ of [Erika], a child who was then and there younger than 14 years of age; indecency with a child by then and there, with intent to arouse and gratify the sexual desire of the defendant, engaging in sexual contact by touching the genitals of [Erika], a child younger than 17 years of age; aggravated sexual assault of a child by then and there intentionally or knowingly causing Defendant's mouth to contact the sexual organ of [Erika], a child younger than 17 years of age[.]

*See id.* § 21.02(b), (c)(2), (4); *see also id.* §§ 21.11(a)(1), 22.021(a)(1)(B)(i), (iii).

The trial court conducted a jury trial. Darcy, Erika's older sister, testified that she helped raise Erika and her younger brother because their mother "wasn't really around." Darcy explained that she met Brown when her brother's father worked two jobs for him. After her mother separated from her brother's father, Brown let her mother and she and her brother move in with Brown because they were unable to pay their bills. Darcy testified they moved in with Brown in May 2018, and her and

---

[1] We use pseudonyms to refer to the victim and her sister to conceal their identities. *See* Tex. Const. art. I, § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process[.]").

her siblings stayed at Brown's house when their mother went to jail in mid-June. Darcy explained there were two trailers on Brown's property, and they lived in the main trailer with Brown and his family. Darcy described the second trailer as a "man cave[,]" which was an "adult building[]" where Brown kept his gaming items. Regarding sleeping arrangements, Darcy testified that her mother slept in the man cave, she slept in Brown's office, and Erika and her brother slept with Brown's children.

Darcy testified Brown's children were "terrified of him[,]" and her first impression was that he "seemed a little off[.]" Darcy described two incidents when Brown made her uncomfortable in the man cave, and she testified that he showed her pornography and had a "boner[.]" Darcy explained that Brown gave her a pink vibrator that he kept in a red bag that said "'naughty or nice' on it." She testified that Brown had her pick a straw from the bag, which had multiple items, and the straw had a pair of underwear wrapped over the vibrator.

Darcy also described an incident that occurred at Brown's house on the Fourth of July when she was seventeen, explaining that Brown made her feel "extremely uncomfortable[]" when he got "too close[]" when she was in the pool. Darcy explained that after she left Brown's house and was forced to return, Brown took her phone, looked at her private messages, and "told me that if I ever stepped foot back on his property[] he would shoot me in the head." Darcy left Brown's property

3

around the first week of August, and Erika and her brother stayed with Brown. In February 2019, Darcy moved back into a house with her siblings, and Darcy testified that after she found a vibrator in Erika's bedroom and talked with Erika, she called the police.

Erika, who was seventeen years old, testified that she was twelve years old and attending school at Bozman Intermediate when her family first moved in with Brown. Erika described Brown's man cave as having computers, games, and soundproof walls, and she explained that she and Brown were alone in the man cave multiple times. Erika recalled the first time Brown asked her to come to the man cave, Brown locked the doors and played a game where "he touched from my knee up each time and asked me if it felt uncomfortable." Erika explained the game continued until Brown touched "close to my private parts, and I was uncomfortable[,]" and then Brown showed her different kinds of pornography, including cartoon pornography.

Erika described a second incident when Brown brought her in the man cave where her mother's bed was on the ground, put a mirror between her legs so she could see her vagina, and tried to teach her the different parts of the vagina by "pointing to where it was at." Erika stated Brown did not touch her during the second incident which happened after the Fourth of July. Erika also testified about another incident in the man cave when she and Brown laid on the bed and Brown removed

4

her clothes and touched her breasts and the lips of her vagina with his fingers. Erika explained that after mentioning a sex toy, Brown got a red bag that had "naughty or nice bag[]" written in green letters. Erika testified there were sex toys in the bag, including two hot pink vibrators, and there was underwear wrapped around the vibrators and a straw. Erika stated Brown was not very happy when she told him she did not want a vibrator or to use one in front of him.

Erika testified during one man cave incident when she was twelve years old, Brown asked her to remove her clothes, which she did, and he showed her his penis and asked if she was comfortable with his penis touching her vagina. Erika explained Brown got angry when she told him she was not comfortable and threatened her by showing her his firearm. Erika testified she was scared and when Brown asked again, she said "[y]es[,] and Brown put his penis in her vagina and began "to thrust into me." Erika explained it was "very painful and rough." Erika also explained that during one of the incidents, Brown "used his mouth and his beard on my private spot[]" and "licked me there."

Erika testified that she did not live with Brown before May 2018, and she was still attending Bozman Intermediate school when they moved in, but she later attended Moorhead because of the move. Erika explained that the incidents occurred shortly after her mom was arrested on June 15, 2018, and they happened "a couple months from each other." Erika also explained that two of the incidents happened

before the Fourth of July, and some occurred while she was enrolled in Moorhead. Erika testified she was living with Brown when she attended Moorhead, and the record shows school started on August 15, 2018, but Erika stated she started three days late. The record also shows Erika had back surgery in 2018.

Erika testified she lived with Brown for a year to a year and a half, and she moved out after she turned thirteen in February 2019. Erika explained that she never told anyone about the abuse, but after seeing a poster at school about reporting abuse, she told a counselor. Erika testified that her grandpa also abused her from the ages of eight to eleven years old, but her family would not let her report that abuse because her grandpa got kicked out of the house and had cancer. Erika described Brown's abuse as "extremely different[]" from her grandpa's because Brown "got very angry and aggressive[.]" Erika explained that she reported the abuse because she felt like Brown's children were in danger.

Sergeant Joshua Hilado of the Montgomery County Sheriff's Office testified that he was assigned Erika's case in August 2019, and during his investigation, he arranged Erika's and Darcy's interviews at Safe Harbor, a children's advocacy center. Hilado testified that based on the information from the girls' interviews, he obtained search warrants for Brown's residence and property, including electronic devices, to recover any corroborating evidence pertaining to the initial outcry. Hilado explained that they searched the male clothing section in the master closet of

6

the main house and recovered a patch on a vest that corroborated the girl's forensic interviews. A photograph of the patch, which read "SEX INSTRUCTOR FIRST LESSON FREE[,]" was admitted into evidence. Hilado testified they searched the man cave and recovered the bag the girls described along with vibrators, a DVD about sexual positions, and a mattress lying on the ground. Hilado explained that they also recovered corroborating evidence from Brown's electronic devices.

Hilado reviewed school records, which showed Erika was living at Brown's house and was admitted into Moorhead on August 16, 2018. The school records also showed Erika moved and her parents requested an address change in June 2019. Hilado agreed that the timeline showed Erika lived with Brown from mid-2018 until February 2019 and that the sexual assault was reported in August 2019. Based on his investigation, Hilado testified he had probable cause to arrest Brown.

Cynthia Landreneau, a Computer Forensic Examiner and the Assistant Director of the Greater Houston Area Regional Computer Forensic Lab, testified that in Brown's case, she received digital evidence, extracted data, and prepared a report. Landreneau explained that her report contained relevant findings to the investigation, including "many" pornographic anime videos and images.

Mary Phillips, a forensic interviewer at Children's Safe Harbor, testified that she interviewed Erika, who was thirteen years old at the time of the interview. Phillips referred Erika for a sexual assault exam. Sharon Record, a Sexual Assault

Nurse Examiner ("SANE"), testified she performed Erika's sexual assault examination in September 2019 when Erika was thirteen years old. Record explained that Erika's exam was nonacute, meaning there was no forensic evidence collected because the contact with the perpetrator had not occurred in the last 120 hours. Record testified that Erika reported multiple events when Brown "would rub her vagina with his fingers and twice put his penis in her vagina." Record testified that Erika reported that Brown touched her vagina and boobs with his index finger both under and over her clothes and that it happened six or seven times about a year ago, and that her sister said that Brown was "being creepy[]" and touched her too. Record stated that Erika explained that the last time it happened Brown touched her vagina with his penis, showed her pornography, put her hand on his private, and tried to touch her with a vibrator. Record testified that Erika reported that Brown showed her his "dildo room and asked if she wanted a vibrator." Record stated that Erika reported that Brown threatened to shoot her and her family if she told. Erika also reported that her grandfather had molested and raped her twice when she was around eight years old. Record testified that Erika had thoughts of hurting herself and that after the exam, Erika was checked into an inpatient psychiatric facility.

After the State rested its case, Brown moved for a directed verdict, arguing the State failed to offer evidence from which the jury could find beyond a reasonable doubt that he committed the charged offense. Brown argued that the evidence failed

to show he committed two or more acts of sexual abuse against Erika during a period more than 30 days and that Erika's testimony about the timeline was unreliable. Brown also argued that Erika's testimony was uncorroborated and not credible. The trial court denied Brown's motion for directed verdict, noting that the jury is the exclusive judge of the witnesses' credibility. The jury found Brown guilty of continuous sexual abuse of a child and assessed his punishment at life in prison.

**ANALYSIS**

In issue one, Brown argues the evidence was insufficient to prove continuous sexual abuse of a child because the evidence failed to show he committed two or more acts of sexual abuse during a period that is 30 or more days in duration. In issue two, Brown complains the trial court erred by denying his Motion for Directed Verdict because there was insufficient evidence to support his conviction. We address these issues together because we treat a complaint about the denial of a motion for directed verdict "as a challenge to the legal sufficiency of the evidence." *See Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996); *Franco v. State*, No. 09-22-00027-CR, 2023 WL 8609289, at *6 (Tex. App.—Beaumont Dec. 13, 2023, pet. ref'd) (mem. op., not designated for publication).

We review complaints of legal insufficiency under the standard in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). *See Fernandez v. State*, 479 S.W.3d 835, 837 (Tex. Crim. App. 2016). Under *Jackson*, we review all the evidence in the light most

9

favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *see Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). We defer to the jury's responsibility to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). If the record contains conflicting inferences, we must presume that the factfinder resolved such facts in favor of the verdict and defer to that resolution. *Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The jury as factfinder is the sole judge of the weight of the evidence and credibility of the witnesses, and it may believe all, some, or none of the testimony presented by the parties. *See Metcalf v. State*, 597 S.W.3d 847, 865 (Tex. Crim. App. 2020) (citing *Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018)); *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995). The appellate court does not reweigh the evidence or determine the credibility of the evidence, nor does it substitute its own judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

We treat direct and circumstantial evidence equally and consider the "'combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Clayton*, 235 S.W.3d at 778 (quoting *Hooper*, 214 S.W.3d

10

at 16-17). Each fact need not point directly and independently to the guilt of the defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Temple v. State,* 390 S.W.3d 341, 359 (Tex. Crim. App. 2013); *Hooper*, 214 S.W.3d at 13; *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The testimony of a child victim, standing alone and without corroboration, is sufficient to support a conviction for indecency with a child. Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1) (providing that child's testimony alone is sufficient to support a conviction for a sexual offense when the child is under the age of seventeen at the time of the alleged offense); *Chasco v. State*, 568 S.W.3d 254, 258 (Tex. App.—Amarillo 2019, pet. ref'd).

The indictment alleges that Brown committed the offense of continuous sexual abuse of a child against Erika "from on or about June 1, 2018 through June 1, 2019," by committing two acts of aggravated sexual assault of a child by penetrating Erika's sexual organ with his sexual organ and by contacting Erika's sexual organ with his mouth, and one act of indecency with a child by touching Erika's genitals with intent to arouse or gratify his sexual desire. *See* Tex. Penal Code Ann. §§ 21.02(b), (c)(2), (4), 21.11(a)(1), 22.021(a)(1)(B)(i), (iii). A person commits the offense of continuous sexual abuse of a child if:

> (1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

11

(2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is . . . a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense[.]

*Id.* § 21.02(b).

Section 21.02 of the Penal Code defines "act of sexual abuse" as including, among other things, an act that constitutes the offense of indecency with a child under section 21.11(a)(1) if the actor committed the offense in a manner other than by touching, including touching through clothing, the breast of a child; and an act that constitutes the offense of "aggravated sexual assault under Section 22.021[.]" *Id.* § 21.02(c)(2), (4). A person commits the offense of indecency with a child under section 21.11(a)(1) if the person engages in sexual contact with a child younger than 17 years of age or causes the child to engage in sexual contact. *Id.* § 21.11(a)(1). Section 21.11 defines "sexual contact" to mean "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child[.]" *Id.* § 21.11(c)(1). A person commits the offense of aggravated sexual assault of a child under Section 22.021 if the person intentionally or knowingly causes the penetration of the sexual organ of a child by any means or causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor. *Id.* § 22.021(a)(1)(B)(i), (iii).

12

The State need not prove the exact dates of the abuse, only that "there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration." *Brown v. State*, 381 S.W.3d 565, 574 (Tex. App.—Eastland 2012, no pet.); *Lane v. State*, 357 S.W.3d 770, 773–74 (Tex. App. —Houston [14th Dist.] 2011, pet. ref'd); *see also* Tex. Penal Code Ann. § 21.02(d) ("[M]embers of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed.").

Erika testified that the sexual abuse incidents happened when she lived at Brown's home between May 2018 and February 2019. She testified that she was twelve years old when Brown touched the lips of her vagina with his fingers and showed her pornography while they were in the man cave. Erika explained that Brown tried to teach her about her vagina and showed her pink vibrators he kept in his "naughty or nice bag." Erika also testified that during another incident in the man cave, Brown threatened her by showing her his firearm and then put his penis in her vagina. Erika explained that during one of the incidents Brown "used his mouth and his beard on my private spot[]" and "licked me there." Erika testified that the incidents happened shortly after June 15, 2018, and "a couple months from each other." Erika explained that some of the incidents happened when she lived with Brown while attending school at Moorhead in August 2018. School records show

13

Erika was in school in August 2018, a period which the jury could conclude that one of the incidents occurred during the school year. Erika admitted that she couldn't remember the specific dates of these incidents. The State's evidence included potential timelines for the dates of the acts of sexual abuse. The jury was free to weigh the evidence presented and ultimately determine whether the sexual abuse took place over more than a 30-day period.

Erika's testimony alone was sufficient to support the verdict. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1); *Chasco*, 568 S.W.3d at 258. Erika's testimony was corroborated by Darcy, who also testified that Brown gave her a pink vibrator from a "'naughty or nice'" bag and had a "boner[]" when he showed her pornography in the man cave. Darcy testified that she left Brown's house after he made her feel "extremely uncomfortable[,]" and when she was forced to return, he threatened to shoot her if she came back. Sergeant Hilado testified that when they searched the man cave, they found the bag the girls described along with vibrators, a DVD about sexual positions, and a mattress on the floor. Hilado explained that they also recovered corroborating evidence from Brown's electronic devices, and Landreneau testified that she extracted data from Brown's devices, which included pornographic anime videos and images. Hilado testified that school records confirmed that Erika was living at Brown's house when she attended Moorhead in August 2018.

14

The SANE that examined Erika testified that Erika reported multiple events when Brown "would rub her vagina with his fingers and twice put his penis in her vagina." The SANE testified that Erika reported Brown touched her vagina with his index finger both under and over her clothes and that it happened six or seven times about a year ago. The SANE testified that Erika stated that during the last incident, Brown touched her vagina with his penis, showed her pornography, and tried to touch her with a vibrator.

The jury, in its role as factfinder, could have found Erika's testimony was credible. The jury could have believed Erika's testimony that Brown touched her vagina with his fingers, mouth, and penis and penetrated her vagina with his penis during the incidents in the man cave and that the abuse started in mid-June 2018 when she was around twelve years old. The jury could have also believed Erika's testimony that the abuse happened six or seven times "a couple months from each other[,]" and that some of the incidents happened in August 2018 when she was attending Moorhead. Based on Erika's testimony, the jury could have believed that the alleged offenses occurred prior to the date of the indictment and continued over a two-month period. Based on the evidence at trial, the jury could have concluded that Brown, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse," namely aggravated sexual assault of a child and indecency with a child. *See* Tex. Penal Code Ann. §§ 21.02(b), (c)(2), (4),

15

21.11(a)(1), 22.021(a)(1)(B)(i), (iii); *Lane*, 357 S.W.3d at 773-74; *see also* Tex. Penal Code Ann. § 21.02(d). Viewing the evidence in the light most favorable to the verdict and deferring to the jury's authority to determine the credibility of the witnesses and the weight to give their testimony, we conclude that a reasonable factfinder could have found the essential elements of the offense beyond a reasonable doubt. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1); *Metcalf*, 597 S.W.3d at 865; *Brooks*, 323 S.W.3d at 902 n.19; *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13; *Chasco*, 568 S.W.3d at 258; *Lane*, 357 S.W.3d at 774. We overrule issue one. Having concluded there is sufficient evidence to support Brown's conviction for continuous sexual abuse of a child, we also conclude the trial court did not err in denying his motion for directed verdict. Accordingly, we overrule issue two. Having overruled both of Brown's issues, we affirm the trial court's judgment.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on May 13, 2024
Opinion Delivered September 25, 2024
Do Not Publish

Before Golemon, C.J., Johnson and Wright, JJ.

16