In The
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-23-00061-CR**

**JAMES WILLIAM BRYAN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 128th District Court**
**Orange County, Texas**
**Trial Cause No. A210532-R**

## MEMORANDUM OPINION

Appellant James William Bryan appeals his conviction for the offense of continuous sexual abuse of a young child. *See* Tex. Penal Code Ann. § 21.02. In three issues, Bryan complains about the sufficiency of the evidence and the exclusion of evidence. For the reasons explained below, we affirm the trial court's judgment.

# BACKGROUND

A grand jury indicted Bryan for the offense of continuous sexual abuse of a young child, alleging Bryan:

> did then and there, during a period that was 30 or more days in duration, to-wit: from on or about November 3, 2013 through November 3, 2017, when the defendant was 17 years of age or older, commit two or more acts of sexual abuse against a child younger than 14 years of age, namely on or about November 3, 2013, in Orange County, Texas, did then and there with the intent to arouse and gratify the sexual desire of . . . Bryan, engage in sexual contact by touching [] the genitals of [Betsy],[1] a child younger than 14 years of age and not the spouse of . . . Bryan[;]
>
> . . . that on or about November 3, 2015, . . . Bryan, did then and there with the intent to arouse and gratify the sexual desire of . . . Bryan, engage in sexual contact by touching [] the genitals of [Betsy], a child younger than 14 years and not the spouse of . . . Bryan[;]
>
> . . . that on or about November 3, 2016, . . . Bryan, did then and there intentionally and knowingly cause the penetration of the sexual organ of [Betsy], a child who was then and there younger than 14 years of age and not the spouse of . . . Bryan, by his sexual organ[;]
>
> . . . that on or about November 3, 2017, . . . Bryan, did then and there intentionally and knowingly cause the penetration of the mouth of [Betsy], a child who was then and there younger than 14 years of age and not the spouse of . . . Bryan, by his sexual organ
>
> against the peace and dignity of the State.

---

[1] We use pseudonyms and familial titles to refer to the victim, her family members, and other witnesses to conceal their identities. *See* Tex. Const. art. I § 30(a)(1) (granting crime victims "the right to be treated with fairness and with respect for the victim's dignity and privacy throughout the criminal justice process[.]"

2

*See id.* § 21.02(b), (c)(2), (4); *see also id.* §§ 21.11(a)(1), 22.021(a)(1)(B)(i), (ii).

In January 2023, the trial court conducted a jury trial. Betsy's father ("Father") testified that Bryan is his father-in-law and Betsy's grandfather. Father testified that Betsy was currently sixteen years old, and he explained that in early 2020, Betsy exhibited bad behaviors when she was in middle school. Father explained that Betsy was hanging out with a girl around her age who was eleven or twelve years old and became "real defensive and kind of aggressive." Father testified that when he asked Betsy why she was so attached to the girl, Betsy commented that the girl had been sexually abused, and Betsy told Father she had also been sexually abused by "Pepaw[,]" which was the name Bryan went by. Father testified that Bryan denied Betsy's allegations. Father explained they took Betsy to the hospital to get checked out by a sexual assault nurse examiner ("SANE").

Father testified that from the ages of two to eleven Betsy spent a significant amount of time at Bryan's home. Father explained that after the outcry, he tried to recall the signs he missed, and he testified that when Betsy was three or four years old, Betsy commented that Bryan "tickled her tootie." When Father questioned whether Bryan had touched Betsy inappropriately, Bryan claimed it was a misunderstanding. Father also explained that he was concerned that Bryan was showering with Betsy when she was five or six years old and sleeping in the same bed with Betsy when she was seven or eight years old. Father testified that when

3

Betsy was around eleven years old, she detached from Bryan and did not want to hug him or go to his home. At the time of trial, Father was divorcing Betsy's mother ("Mother"), who had supervised visitation with Betsy.

Betsy testified that she refers to her grandfather, Bryan, as "Pepaw." Betsy testified that she remembers staying at Bryan's home from the ages of five to twelve, and she slept in between her grandparents in their bed because she feared the dark. Betsy testified that when she was seven years old, she was sleeping with her grandparents when Bryan put his finger inside her sexual organ, and she stated that it happened "[a] lot." Betsy explained that on one occasion, her grandma ("Grandmother") felt his hand and immediately got up and started yelling at Bryan, and when Betsy tried to talk to Grandmother about the incident, she "immediately got shut down."

Betsy testified about an incident that occurred in her grandparents' bathroom when Bryan took off his clothes, got into the shower with her, pushed her down, and made her put her mouth on his genitals. Betsy explained that she was under ten years old when she started sleeping in her own room at her grandparents' home, and Bryan came into the room and asked for "tootie." Betsy testified that Bryan used the word "tootie" when he wanted her genitals and that when she told him no, he got into the bed "in between my legs and took my clothes off and put his genitals inside of me." Betsy testified that Bryan used a rag to wipe his ejaculation or the lotion he used off

4

their genitals. Betsy explained that she felt sharp pain when Bryan penetrated her sexual organ with his sexual organ. Betsy also had bed-wetting issues and wore Pull-Ups at Bryan's home, and there were times when she woke up with her Pull-Up off and a puddle beside her. Betsy testified that Bryan offered her surprises at Walmart if she did not resist and told her if she ever told anyone he would go to jail for a very long time, and she explained that "as a kid I did not want that because he was my grandpa."

Betsy testified about another incident when Bryan penetrated her sexual organ with his sexual organ in the camper at an RV park. Betsy stated Bryan asked for her "tootie," and when she said no, he chased her with a leather belt. Betsy explained that in 2020, when she was thirteen years old, she told her parents she was hanging out with a certain girl because she "ha[d] been through the same stuff as me." Betsy then told her parents about the abuse. Betsy testified that Bryan penetrated her sexual organ with his sexual organ "[m]ultiple times[,]" penetrated her mouth "[m]aybe twice[,]" and penetrated her bottom where she sits down once. Betsy stated that the abuse occurred over "[m]any years[,]" and when she was eleven years old, Bryan made her take a pregnancy test because she started her menstrual cycle. Betsy explained she stopped wanting to see Bryan when she was twelve years old because she "didn't really know what it was, but I knew it was wrong."

Sergeant Daryl Cowart of the Orange County Sheriff's Office testified that in January 2020, he responded to a service call for a sexual assault case at the hospital, where he interviewed Betsy's parents and spoke briefly to Betsy. Cowart completed an offense report and forwarded it to the detective who would be handling the case.

Detective Matthew Wappler, who was with the Orange County Sheriff's Department, testified that he was initially assigned Betsy's sexual assault case. Wappler explained that he interviewed Betsy, who made a delayed outcry and reported Bryan was the suspect. Detective Jennifer Bradberry of the Orange County Sheriff's Office testified that she took over Betsy's case from Wappler. Bradberry explained she reviewed Betsy's victim statement, took Betsy's parents' witness statements, obtained Betsy's SANE report, and assembled the case file for the grand jury. Bradberry explained that Grandmother never gave a statement and wanted to consult Bryan's attorney.

Rachel Thomas, a forensic nurse, testified she performed a SANE exam on Betsy, who was thirteen years old. Thomas testified that Betsy reported that when she was four years old, Bryan put his hand on her female sex organ and put his whole finger in her "hole thingy. He done his whole finger a lot." Thomas testified that Betsy reported that Bryan told her she could sleep with them, and when Grandmother felt his hand "on there[,]" she slapped Bryan's hand and argued with him. Thomas explained that Betsy also reported that when she was nine years old, Bryan grabbed

6

her female sex organ, pulled her clothes down, and put his penis in her "hole thingy, my vagina." Thomas testified that Betsy stated that Bryan "calls it sex tootie." Betsy reported that the abuse happened "so many times[]" after Grandmother went to bed and while she was at work. Thomas testified that she did not observe any injuries, scars, or tearing during Betsy's SANE exam, which is "very normal[.]" Thomas explained that Betsy's SANE exam was consistent with her patient history she provided.

Grandmother, who had been married to Bryan for 39 years, testified that Betsy slept in the bed with them for many years, and she denied Betsy's allegation that she discovered Bryan touching Betsy's vagina. Grandmother testified that Betsy never told her Bryan was touching her, and she explained that she made Betsy sleep in her own bed because Betsy was "messing with herself" and she told Betsy "'to leave tootie alone.'" Grandmother told Mother about Betsy's behavior, and Mother said Betsy would grow out of it. Grandmother testified that Betsy was spoiled and if Betsy wanted anything, "she pitched a fit, she got." Grandmother stated that Betsy was "very jealous[,]" and she would get mad when other family members wanted to call Bryan "Pepaw[]" and say "'No, that is not your pepaw. It is my pepaw.'"

Grandmother explained that Bryan had been unable to achieve an erection for the past nine to ten years, and they had not had intercourse for "[q]uite a few[]" years because she did not "want him to have a heart attack or anything of that sort."

7

Grandmother denied that Bryan had intercourse with Betsy and stated that she showered with Betsy when she was five or six years old and had Bryan dry Betsy off and dress her. Grandmother explained she first learned of Betsy's allegations from Mother.

Bryan called several relatives and friends who testified in his defense, and none of the witnesses observed Bryan act inappropriately with Betsy, but some of them had observed Betsy being affectionate towards Bryan and jealous when other children got his attention. One defense witness, James, a registered nurse who works in emergency services and hospice, testified that although he is not a SANE, his profession has familiarized him with the anatomy of young girls. When defense counsel attempted to offer James as an expert witness, the State objected that the proper predicate for an expert witness had not been laid, any lay testimony was inadmissible, the testimony was irrelevant, and the defense had failed to disclose James as an expert. The trial court sustained the State's objection that James could not testify as an expert because defense counsel failed to provide adequate notice.

Bryan testified in his defense and denied Betsy's allegations. Bryan explained that he had not had an erection in about ten years because he has erectile dysfunction due to his diabetes medications. Bryan also explained that Grandmother was a light sleeper and knows when he gets up to go to the bathroom in the middle of the night.

8

Bryan testified that Betsy touched herself until she was seven or eight years old, and Mother got on to her for doing it.

The State called Thomas, the forensic nurse, as a rebuttal witness. Thomas explained that Betsy's jealousy and possessive nature toward Bryan indicated a "trauma bond[,]" which is created when "there is an unhealthy relationship between a perpetrator and a victim," "[i]t's not unnatural for anyone that's in that position to feel love. Because they honestly do love the person, just not that one bad thing that they do when no one is watching." Thomas testified that "[t]here is that strong trauma bond where they are told, 'We have to keep this a secret. I will go to jail if you tell anybody[.]'" Concerning testimony about Betsy touching herself, Thomas explained that "when a child is introduced to the nerve endings in their genitalia, it doesn't typically hurt[,]" and "it can be pleasurable." Thomas testified that the child does not know they are not supposed to touch themselves and that the behavior is inappropriate. Thomas also testified that a regression in potty training or bed-wetting can be a symptom in a child who has been sexually abused.

The jury found Bryan guilty of continuous sexual abuse of a young child and assessed his punishment at life in prison.

## ANALYSIS

Sufficiency of the Evidence

In issue one, Bryan argues the evidence was insufficient to prove he committed the offense of continuous sexual abuse of a child. Bryan complains that the evidence from Betsy's SANE exam does not support Betsy's allegations and that it was impossible for him to have sexual relations with Betsy because he had erectile dysfunction for the past ten years.

We review complaints of legal insufficiency under the standard in *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979). *See Fernandez v. State*, 479 S.W.3d 835, 837 (Tex. Crim. App. 2016). Under *Jackson*, we review all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *see Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). We defer to the jury's responsibility to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). If the record contains conflicting inferences, we must presume that the factfinder resolved such facts in favor of the verdict and defer to that resolution. *Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). The jury as factfinder is the sole judge of the weight of the evidence and credibility of the witnesses, and

it may believe all, some, or none of the testimony presented by the parties. *See Metcalf v. State*, 597 S.W.3d 847, 865 (Tex. Crim. App. 2020) (citing *Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018)); *Heiselbetz v. State*, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995). The appellate court does not reweigh the evidence or determine the credibility of the evidence, nor does it substitute its own judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

We treat direct and circumstantial evidence equally and consider the "'combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'" *Clayton*, 235 S.W.3d at 778 (quoting *Hooper*, 214 S.W.3d at 16-17). Each fact need not point directly and independently to the guilt of the defendant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013); *Hooper*, 214 S.W.3d at 13; *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). The testimony of a child victim, standing alone and without corroboration, is sufficient to support a conviction for indecency with a child and aggravated sexual assault of a child. Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1) (providing that child's testimony alone is sufficient to support a conviction for a sexual offense when the child is under the age of seventeen at the time of the alleged offense); *see Obey v. State*, No. 09-23-00315-CR, 2024 WL 3593517, at

11

**10-11 (Tex. App.—Beaumont July 31, 2024, no pet.) (mem. op., not designated for publication); *Chasco v. State*, 568 S.W.3d 254, 258 (Tex. App.—Amarillo 2019, pet. ref'd).

The indictment alleges that Bryan committed the offense of continuous sexual abuse of a young child against Betsy "from on or about November 3, 2013 through November 3, 2017," by committing two acts of aggravated sexual assault by penetrating Betsy's sexual organ with his sexual organ and by penetrating Betsy's mouth with his sexual organ, and one act of indecency with a child by touching Betsy's genitals with intent to arouse or gratify his sexual desire. *See* Tex. Penal Code Ann. §§ 21.02(b), (c)(2), (4), 21.11(a)(1), 22.021(a)(1)(B)(i), (ii). A person commits the offense of continuous sexual abuse of a child if:

(1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims; and

(2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is . . . a child younger than 14 years of age, regardless of whether the actor knows the age of the victim at the time of the offense[.]

*Id.* § 21.02(b).

Section 21.02 of the Penal Code defines "act of sexual abuse" as including, among other things, an act that constitutes the offense of indecency with a child under section 21.11(a)(1) if the actor committed the offense in a manner other than

12

by touching, including touching through clothing, the breast of a child; and an act that constitutes the offense of "aggravated sexual assault under Section 22.021[.]" *Id.* § 21.02(c)(2), (4). A person commits the offense of indecency with a child under section 21.11(a)(1) if the person engages in sexual contact with a child younger than 17 years of age or causes the child to engage in sexual contact. *Id.* § 21.11(a)(1). Section 21.11 defines "sexual contact" to mean "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child[.]" *Id.* § 21.11(c)(1). A person commits the offense of aggravated sexual assault of a child under Section 22.021 if the person intentionally or knowingly causes the penetration of the sexual organ of a child by any means or causes the penetration of the mouth of a child by the sexual organ of the actor. *Id.* § 22.021(a)(1)(B)(i), (ii).

The State need not prove the exact dates of the abuse, only that "there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration." *Brown v. State*, 381 S.W.3d 565, 574 (Tex. App.—Eastland 2012, no pet.); *Lane v. State*, 357 S.W.3d 770, 773-74 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *see also* Tex. Penal Code Ann. § 21.02(d) ("[M]embers of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed.").

Betsy testified that between the ages of five and twelve, she stayed at Bryan's home. Betsy testified that when she was seven years old, she was sleeping in between her grandparents when Bryan put his finger inside her sexual organ, and she stated that it happened "[a] lot." Betsy described another incident that occurred in her grandparents' bathroom when Bryan made her put her mouth on his genitals. Betsy explained that she was under ten years old and sleeping in her own room at her grandparents' home when Bryan got into the bed "in between my legs and took my clothes off and put his genitals inside of me." Betsy also testified that Bryan penetrated her sexual organ with his sexual organ while they were in the camper. Betsy stated that the abuse occurred over many years and it included Bryan penetrating her sexual organ with his sexual organ "[m]ultiple times[,]" and penetrating her mouth "[m]aybe twice."

Betsy's testimony alone was sufficient to support the verdict. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1); *Obey*, 2024 WL 3593517, at **10-11; *Chasco*, 568 S.W.3d at 258. The jury, in its role as factfinder, could have found Betsy's testimony was credible. The jury could have believed Betsy's testimony that Bryan put his finger inside her sexual organ "[a] lot[,]" penetrated her sexual organ with his sexual organ "[m]ultiple times[,]" and penetrated her mouth with his sexual organ "[m]aybe twice." Based on Betsy's testimony, the jury could have also believed that the alleged offenses occurred prior to the date of the indictment and

14

continued over a period of many years. Based on the evidence at trial, the jury could have concluded that Bryan, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse, namely aggravated sexual assault of a child and indecency with a child. *See* Tex. Penal Code Ann. §§ 21.02(b), (c)(2), (4), 21.11(a)(1), 22.021(a)(1)(B)(i), (ii); *Lane*, 357 S.W.3d at 773-74; *see also* Tex. Penal Code Ann. § 21.02(d). Viewing the evidence in the light most favorable to the verdict and deferring to the jury's authority to determine the credibility of the witnesses and the weight to give their testimony, we conclude that a reasonable factfinder could have found the essential elements of the offense beyond a reasonable doubt. *See* Tex. Code Crim. Proc. Ann. art. 38.07(a), (b)(1); *Metcalf*, 597 S.W.3d at 865; *Brooks*, 323 S.W.3d at 902 n.19; *Clayton*, 235 S.W.3d at 778; *Hooper*, 214 S.W.3d at 13; *Obey*, 2024 WL 3593517, at \*\*10-11; *Chasco*, 568 S.W.3d at 258; *Lane*, 357 S.W.3d at 774. We overrule issue one.

Exclusion of Alleged Expert Testimony Based on Lack of Notice

In issue two, Bryan argues the trial court erred by excluding the testimony of James, his nursing expert, who attempted to testify about evidence of trauma or injury one would expect to see on a young girl who had been raped numerous times. Bryan admits he did not provide notice to the State, but he claims his failure to disclose James as a testifying expert was not in bad faith because he first learned of his qualifications at trial and the State could have reasonably anticipated James

15

would offer testimony to dispute the SANE's testimony that lack of physical evidence was consistent with sexual abuse. Bryan also argues James's testimony qualified as lay witness testimony and the exclusion of the testimony affected his substantial rights by denying his right to present a defense.

The record shows that when defense counsel called James, Bryan's friend of ten years, to testify about his observations of Bryan's interactions with Betsy, defense counsel stated, "I notice you're in scrubs[,]" and proceeded to ask what James did for a living. When James testified that he was not a SANE nurse but a registered nurse who worked in emergency services and hospice, defense counsel attempted to ask James a hypothetical question about a patient who presented to him with a history of being violently raped 20 to 50 times. The State objected that the proper predicate for an expert witness had not been laid, any lay testimony was inadmissible, and the testimony was irrelevant because James was not a SANE nurse. After the trial court allowed defense counsel to lay the predicate for an expert witness, the State requested to take James on voir dire, and the trial court carried the objection and allowed James to testify that he had never performed a SANE exam and had only referred patients to a SANE nurse a "handful[]" of times.

When defense counsel attempted to ask James if hypothetically, he would expect to see some evidence of trauma, past injury, or healed scars in "a young 11-, 12-, 13-year-old girl who was violently raped 20 to 50 times," the State renewed its

16

previous objection and asked to approach to lodge a procedural objection as to any attempt to elicit expert testimony. The State explained that it had filed a motion for defense counsel to disclose expert witnesses, the defense counsel did not disclose any, and it was surprised and unprepared for any expert testimony. The State argued that James's testimony was irrelevant, and he could not testify as an expert because defense counsel failed to provide adequate notice. At that point, the trial court stated, "now I understand why you wanted to approach. So, that's sustained." Defense counsel then explained that he "just found out today."

The record shows the State filed a Motion to Disclose Experts, requesting the trial court to order defense counsel to disclose before trial the name and address of each person the defendant may use to present evidence under Rules of Evidence 702, 703, and 705 as required by article 39.14(b) of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 39.14(b). The trial court granted the State's Motion and ordered defense counsel to disclose any person who would testify as an expert witness by January 16, 2023. *See* Tex. R. Evid. 702 (Testimony by Expert Witnesses). Defense counsel did not disclose any expert witnesses prior to trial.

We review a trial court's decision on whether to allow an undisclosed expert witness to testify for an abuse of discretion. *See Wood v. State*, 18 S.W.3d 642, 649 (Tex. Crim. App. 2000) (citations omitted); *Zhigang Wang v. State*, No. 09-17-

17

00462-CR, 2019 WL 5057206, at *10 (Tex. App.—Beaumont Oct. 9, 2019, pet. ref'd) (mem. op., not designated for publication). A trial court abuses its discretion when its ruling is arbitrary or unreasonable. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005); *see Webber v. State*, Nos. 03-21-00572-CR, 03-21-00573-CR, 03-21-00574-CR , 2023 WL 2603390, at *7 (Tex. App.—Austin Mar. 23, 2023, no pet.) (mem. op., not designated for publication). We must uphold the trial court's ruling if it falls within the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 390-91 (Tex. Crim. App. 1991) (op. on reh'g).

When a defendant fails to disclose the identity of a testifying expert witness pursuant to a trial court's discovery order and the State objects based on a lack of notice, we apply the same test used when the prosecution fails to notify the defense of expert witnesses. *Chakravarthy v. State*, 516 S.W.3d 116, 136 (Tex. App.—Corpus Christi-Edinburg 2017, pet. ref'd) (citing *Johnson v. State*, 233 S.W.3d 109, 114-15 (Tex. App.—Houston [14th Dist.] 2007, no pet.)); *see also Strawn v. State*, No. 2-02-170-CR, 2003 WL 21235537, at **2-4 (Tex. App.—Fort Worth May 29, 2003, pet. ref'd) (not designated for publication). The test includes two factors: (1) whether the party's action in failing to timely disclose the expert witness was in bad faith; and (2) whether the opposing party could have reasonably anticipated that the undisclosed expert would testify at trial. *Chakravarthy*, 516 S.W.3d at 136 (citing *Johnson*, 233 S.W.3d at 115). In determining whether the defense acted in bad faith,

18

we inquire as to whether the State showed the defense intended to deceive the State by failing to provide the State with notice that it intended to elicit expert testimony from the witness. *See Hamann v. State*, 428 S.W.3d 221, 227 (Tex. App.—Houston [1st Dist.] 2014, pet ref'd) (citing *Nobles v. State*, 843 S.W.2d 503, 514-15 (Tex. Crim. App. 1992)). In determining whether the State could have reasonably anticipated that the defense would call the witness as an expert, we examine (1) the degree of surprise to the State; (2) the degree of disadvantage inherent in that surprise; and (3) the degree to which the trial court was able to remedy that surprise by granting a recess, postponement, or continuance. *See id.* (citations omitted).

Here, there is no evidence defense counsel acted in bad faith. Thus, we conclude defense counsel's failure to timely disclose James as an expert witness was not in bad faith. *See Chakravarthy*, 516 S.W.3d at 136. That said, the record does show that the State could not have reasonably anticipated that James would offer expert testimony. *See id.* Based on this record, we cannot conclude the trial court abused its discretion by not allowing James to offer expert testimony.

We need not consider Bryan's argument that James's testimony qualified as lay witness testimony and the exclusion of the testimony affected his substantial rights by denying his right to present a defense because he failed to inform the trial court that he was offering the testimony as lay testimony and he failed to make an offer of proof on this point. Accordingly, his argument is not preserved for our

review. *See* Tex. R. App. P. 33.1(a) (stating that to preserve error, the record must show a specific and timely complaint was made to the trial judge and that the trial judge ruled on the complaint). The Appellant did not make an offer of proof as to exactly what this proposed expert's testimony would have been. "To preserve error regarding the exclusion of evidence, the offering party must make an 'offer of proof' conveying the substance of the proffered evidence. Because appellant failed to do so, he failed to preserve error." *Roberts v. State*, 220 S.W.3d 521, 532 (Tex. Crim. App. 2007); Tex. R. Evid. 103. Nor is the answer apparent from the context of this case showing only that the proposed expert was a nurse, wearing scrubs, had worked in an emergency room and briefly seen only a handful of outcry victims. *See Villarreal v. State*, Nos. 09-21-00116-CR, 09-21-00117-CR, 2022 Tex. App. LEXIS 2362, at *6 (Tex. App.—Beaumont Apr. 13, 2022, pet. ref'd) (mem. op., not designated for publication) (appellate court cannot speculate how witness would have answered). We overrule issue two.

Exclusion of Alleged Relevant Testimony

In issue three, Bryan complains the trial court abused its discretion by sustaining the State's objection to his inquiry about whether he had abused other children. Bryan argues that the testimony was relevant because most child abusers abuse multiple children and the fact that Bryan was never accused of abusing other children is relevant evidence of his innocence.

We review a trial court's decision on the admission or exclusion of evidence for an abuse of discretion and must uphold the trial court's ruling if it was "within the zone of reasonable disagreement." *Wells v. State*, 611 S.W.3d 396, 427 (Tex. Crim. App. 2020); *Montgomery*, 810 S.W.2d at 391. A trial court abuses its discretion if it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). We will uphold the trial court's decision if it is correct on any theory of law applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009); *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002). Evidence having any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence is relevant. *See* Tex. R. Evid. 401.

The record shows when defense counsel sought to elicit testimony concerning whether a defense witness's daughters had ever complained about Bryan touching them, the State objected based on hearsay and relevance. Defense counsel argued that testimony about whether Bryan had touched other children who were the same age as Betsy was relevant. The State reiterated its hearsay objection and stated that any possible response was not relevant to Betsy's allegations because the "absence of evidence is not evidence of absence." Defense counsel argued that the fact that

21

the witness's daughters were not touched was "very relevant to this case." The trial court sustained the State's objection.

Based on this record and considering Bryan's argument on appeal that evidence showing Bryan was never accused of abusing other children is relevant evidence of his innocence, we cannot conclude the evidence had any tendency to make a fact more or less probable than it would be without the evidence or that the fact was of consequence in determining the action. *See* Tex. R. Evid. 401. We conclude the trial court's decision to exclude the evidence was within the zone of reasonable disagreement. *See Wells*, 611 S.W.3d at 427 (stating we must uphold the trial court's ruling if it was "within the zone of reasonable disagreement"). We overrule issue three. Having overruled all of Bryan's issues, we affirm the trial court's judgment.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on April 11, 2024
Opinion Delivered October 30, 2024
Do Not Publish

Before Johnson, Wright and Chambers, JJ.